THOMAS E. HICKEY *et ux. vs.* McCABE & BIHLER *et als.*

MARCH 4, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Resulting Injuries to Adjacent Property without Physical Force or Negligence.*

Without proving negligence on the part of defendant, a property owner is entitled to recover for physical injuries to his property resulting from blasting and other operations carried on by defendant in the construction of a tunnel, although no physical substances have been thrown upon it.

(2)  *Same.  Injunctions.*

*Semble;* the temporary character of the operations in the course of which dangerous forces are knowingly and intentionally created by a defendant and projected through another's property, and the impossibility or grave difficulty of profitably improving defendant's property otherwise, may be a good reason why a court of equity should not interfere by injunction unless the resulting damage is very serious, but it is not a sufficient reason why a defendant should not respond in damages caused others by his operations, as a part of the cost of improving his own property.

TRESPASS ON THE CASE.   Heard on exceptions of plaintiff, and sustained.

JOHNSON, J.   This is an action of trespass on the case brought in the Superior Court for the county of Providence by Thomas E. Hickey and Rose Hickey, his wife, against Joseph McCabe and Charles S. Bihler, both of Providence, copartners doing business under the firm name of McCabe & Bihler, and the New York, New Haven & Hartford Railway Company, and the Providence Terminal Company, both corporations incorporated under the laws of the State of Rhode Island.

The first count in said plaintiffs' declaration, after describing the location of said property, sets out that the defendants were engaged in constructing a certain tunnel through, or under land owned or occupied by the New York, New Haven & Hartford Railway Company and the Providence Terminal Company, or either of them; that said land was close to and adjoining the premises of the plaintiffs and that the defendants, while so en-

gaged in building and constructing said tunnel near the property of the plaintiffs, did explode and discharge dynamite for the purpose of blasting in the constructing and building of said tunnel, well knowing that said acts would probably result in injuries to the premises and buildings of the plaintiffs; also that the shock and concussion resulting from said explosions and discharge of said dynamite violently jarred and shook the said houses and other buildings of the plaintiffs, causing said walls and ceilings to become cracked and broken, chimneys to crack and sag so that they became unsafe and infirm, and causing serious damage to heavy gas fixtures or chandeliers and to furnaces and furnace pipes in said houses, and that said houses were otherwise greatly jarred and shaken and greatly lessened and depreciated in value and rendered uncomfortable and unfit for habitation.

The second count in the declaration, after alleging ownership of the property, alleges that the defendants wrongfully and negligently kept and used on the premises of the New York, New Haven & Hartford Railway Company or the Providence Terminal Company a certain cement mixer operated by steam at high power for the purpose of mixing cement in large quantities to be used in the construction of the tunnel, together with certain boilers, furnaces, engines, and other machinery, well knowing that the said acts would probably result in injury to the premises and buildings of the plaintiffs.

The third count of the plaintiffs' declaration, after describing the premises, alleges that the defendants, while engaged in building and constructing the tunnel, wrongfully, recklessly, and negligently dug away and removed the soil from the land of the New York, New Haven & Hartford Railway Company or the Providence Terminal Company at a point close to and adjoining the premises of the plaintiffs, to a great depth, well knowing that said acts would probably cause damage to the premises of the plaintiffs, whereby, as a result of the said acts and the removal of said soil, certain parts of the surface of the plaintiffs' land did sink, cave in, and give way, causing the land to sink and cave in, and a barn and house, situated upon one of the lots, numbered 171, to sink and sag with the surface of said land, causing the house and barn to become warped and

cracked, and causing them to become unfit for use for the purpose for which they had been used, and causing the walls and ceilings of the house to become cracked and broken, etc.

The case was tried, April 12, 1909, in the Superior Court with a jury. The plaintiffs introduced evidence of the blasting of rock in the tunnel by dynamite, and the frequency and severity of the consequent concussions in their houses close by, and of the resulting cracking and loosening of walls and ceilings, and other similar damage. They also introduced evidence of the noisy operation of the cement mixer, and the resulting diminution of rents which the plaintiffs received from these houses.

After the evidence offered by the plaintiffs had all been introduced, the defendants moved for a nonsuit, on the ground that no evidence had been offered of negligence on the part of the defendants in the premises. This motion was sustained by the court, and the plaintiffs were nonsuited. To this ruling of the court the plaintiffs took an exception, and the case is now before this court upon the plaintiffs' bill of exceptions subsequently duly filed and allowed, in which this exception alone is relied upon.

(1)    The plaintiffs admit, for the purposes of this hearing, that no negligence on the part of the defendants was shown; but contend that they are liable, irrespective of negligence, for physical injuries to the plaintiffs' houses resulting from the dynamite blasting and other operations carried on by the defendants in the construction of the tunnel.

The question before this court, therefore, is whether a property owner can recover for damages thus inflicted upon his property, when no physical substances have been thrown upon it, without proving negligence on the part of the defendants.

It is well settled that negligence need not be shown in order to recover for damage done by matter thrown by blasting upon adjoining land. The rule is stated in 19 Cyc. 7, as follows: "It may be said to be the rule that one who in blasting upon his premises casts rocks or other debris upon the land of another is liable for such invasion regardless of the degree of care or skill used in doing the work." The same rule has been applied in numerous cases, of which the following are examples:

*Munro* v. *Dredging, etc. Co.,* 84 Cal. 515; *Georgetown, &c., R. Co.* v. *Eagles,* 9 Colo. 544; *Scott* v. *Bay,* 3 Md. 431; *McAndrews* v. *Collerd,* 42 N. J. L. 189; *Hay* v. *The Cohoes Co.,* 2 N. Y. 159; *St. Peter* v. *Denison,* 58 N. Y. 416; *Sullivan* v. *Dunham,* 161 N. Y. 290; *Carman* v. *Steubenville, &c., R. Co.,* 4 Ohio St. 399; *City of Tiffin* v. *McCormack,* 34 Ohio St. 638.

In *Hay* v. *The Cohoes Co., supra,* the defendant had dug a canal upon its own land. In doing so it was necessary to blast rocks with gunpowder and the fragments were thrown against and injured the plaintiff's dwelling-house upon land adjoining. It was held that the defendant was liable for the injury, although no negligence or want of skill on its part was alleged or proved. In its opinion the court says: "The defendants had the right to dig the canal. The plaintiff the right to the undisturbed possession of his property. If these rights conflict, the former must yield to the latter, as the more important of the two, since, upon grounds of public policy, it is better that one man should surrender a particular use of his land, than that another should be deprived of the beneficial use of his property altogether, which might be the consequence if the privilege of the former should be wholly unrestricted. The case before us illustrates this principle. For if the defendants in excavating their canal, in itself a lawful use of their land, could in the manner mentioned by the witnesses, demolish the stoop of the plaintiff with impunity, they might for the same purpose, on the exercise of reasonable care, demolish his house, and thus deprive him of all use of his property. The use of land by the proprietor is not therefore an absolute right, but qualified and limited by the higher right of others to the lawful possession of their property."

"The courts in some cases recognize a distinction between an injury caused by blasting *debris* directly upon the property of another, and by injuring it from vibrations in the air or earth, caused by the blast, holding that in the latter case it is necessary, to recover for the injury, to show that the work was done negligently or carelessly." 19 Cyc. 7.

It seems to be the general rule that damage from concussion, or vibration of the earth or air, caused by blasts may be recovered for if negligence on the defendant's part is shown.

This seems to be the rule even in the courts of New York and New Jersey, which hold that there can be no recovery for damages caused in this way without proof of negligence. *Newell* v. *Woodfolk*, 91 Hun. 211; *Page* v. *Dempsey*, 184 N. Y. 245; *French* v. *Vix*, 143 N. Y. 90; *Booth* v. *R. W. & O. T. R. R. Co.*, 140 N. Y. 267; *Longtin* v. *Persell*, 30 Mont. 306. In the last-named case the court says in its opinion: "If the damage to plaintiff's property had been caused by fragments of rock thrown upon his property or against his dwelling-house by the blasting which the defendants were doing, the authorities are practically unanimous in holding that the defendants would be liable, even though they exercised reasonable care in their operations. (Cooley on Torts, 332.) We can see no reason whatever for adopting that view, and at the same time holding that they are not liable for damages occasioned by the vibration of the ground or the concussion of the air. The agency employed in either case is the same and the danger as imminent in one instance as in the other."

Recovery has likewise been allowed where buildings have been injured, or their occupation seriously interfered with, by the jarring due to the operation of heavy machinery on adjoining land, or by smoke and noise due to business carried on there. *McKeon* v. *See*, 51 N. Y. 300; *Morton* v. *Mayor, &c., of New York*, 140 N. Y. 207; see also *Hennessy* v. *Carmony*, 50 N. J. Eq. 616; *Baltimore, &c., R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317.

In *Morton* v. *Mayor, &c., of New York, supra,* the defendants had erected a pumping-station for the distribution of Croton water. This they were empowered to do by an act of the legislature. The plaintiff bought several houses next to this station, which were seriously affected by the noise and vibration of the pumping, thereby becoming of less value. It was held that the plaintiff should recover from the defendants. The court says that the defendants, by exercising the power of eminent domain, could have taken sufficient land to prevent the damaging of adjoining property by the erection and operation of the pumping-station, and that, failing to do this, they were liable for the damages resulting.

In *Hennessy* v. *Carmony, supra,* an injunction was granted to prevent a person from operating certain machines which created so much vibration that an adjoining house was injured, such vibration being held to be a continuing trespass. The court says: "He (my neighbor) has no right to shake my fence ever so little, or to throw sand, earth or water upon my land in ever so small a quantity. To do so is an invasion of property and a trespass, and to continue to do so constitutes a nuisance. And if he may not shake my fence or my house by force directed immediately against them, I know of no principle by which he may be entitled to do it by indirect means."

When, however, an examination is made of the cases in which the exact point raised in the case at bar has been at issue, viz., whether one, who, by blasting with powerful explosives, produces severe concussions or vibrations in surrounding earth and air and so materially damages buildings belonging to others, is liable, irrespective of negligence on his part, a sharp and irreconcilable conflict of authority is disclosed. The point seems to have come up first in the lower courts of New York, where it was decided in favor of the plaintiff, following the reasoning of *Hay* v. *The Cohoes Co., supra,* and other cases. *Morgan* v. *Bowes,* 42 N. Y. St. Rep. 791 (Sup. Ct. 1891); *Booth* v. *Rome, &c., R. Co.,* 44 N. Y. St. Rep. 9 (Sup. Ct. 1892). In the former of these two cases the Supreme Court says: "The appellants claim reversal upon two grounds. . . . second, that an action for damages caused by blasting on one's own land will only lie when an actual trespass upon the *res* is committed, as where rock or soil is blown over into the adjoining lot or against the adjoining house. . . . We think the second point taken by the appellants also is untenable. The rules which have been laid down upon the subject of private nuisances, causing damage to individuals, do not limit the right of action as thus contended for. It is true that in *Hay* v. *Cohoes Co.,* 2 N. Y. 159, fragments of the rock blasted by the defendants were actually thrown against and injured the adjoining building, which belonged to the plaintiff. The observations of the learned court were made with reference to that fact, but it was by no means intimated that such an action

could not be maintained where the same damage was produced by violent and continuous concussions. On the contrary, the disturbance of the plaintiff's rightful possession, and the direct and immediate injury to his property, were the grounds upon which the right of recovery was placed. There the plaintiff's stoop was demolished. It was certainly unimportant whether such demolition resulted from the direct attack of broken rock or from the concussion caused by the blast." When *Booth* v. *Rome, &c., R. Co., supra,* got to the Court of Appeals, however, the decision of the lower court was reversed, and it was held that there can be no recovery for injuries to property due to blasting carried on upon adjoining land to excavate it for sunken railroad tracks, when no stones or other debris are thrown over upon the plaintiff's land and no negligence on the defendant's part is shown. *Booth* v. *Rome, &c., R. Co.,* 140 N. Y. 267. In that case the court says (p. 279): "Many of the cases cited by counsel are cases of the permanent appropriation of property for dangerous or noxious uses causing damage. The distinction between such cases and those where the injury arises from acts done in the necessary adjustment of property for a lawful use by means necessary and not unusual, but involving damage to adjacent property, has been adverted to. We recognize the difficulty of formulating a general rule regulating the rights of adjacent landowners in the use of their property, and we realize how narrow the margin is which separates this from some decided cases. In *Marvin* v. *Brewster Iron Co.* (55 N. Y. p. 557), the opinion of the learned judge who wrote in that case sustains the conclusion we have reached in this case. But the point was not necessarily involved, since it was held that the defendant there had acquired by grant the right to employ blasting in removing the mineral, and that the plaintiff, a subsequent grantee of the surface, could not complain of injury to his house therefrom in the absence of negligence on the part of the defendant in conducting the work. Judge Folger, in that case said: ' Whatever it is necessary for him (defendant) to do for the profitable and beneficial enjoyment of his own possession, and which he may do with no ill-effect to the adjacent surface in its natural state, that he may

do though it harm erections lately put there.' If the learned judge intended to lay down the rule that the owner of land may do anything on his own land which would do no injury to the adjacent property if it had remained in its natural state, the proposition is probably too broad. One may do in a barren waste many things which he could not lawfully do in or near an inhabited town.

"But the defendant here was engaged in a lawful act. It was done on its own land to fit it for a lawful business. It was not an act which, under all circumstances, would produce injury to his neighbor, as is shown by the fact that other buildings near by were not injured. The immediate act was confined to its own land, but the blasts, by setting the air in motion, or in some other unexplained way, caused an injury to the plaintiff's house. The lot of the defendant could not be used for its roadbed until it was excavated and graded. It was to be devoted to a common use, that is, to a business use. The blasting was necessary, was carefully done, and the injury was consequential. There was no technical trespass. Under these circumstances, we think the plaintiff has no legal ground of complaint. The protection of property is doubtless one of the great reasons for government. But it is equal protection to all which the law seeks to secure. The rule governing the rights of adjacent landowners in the use of their property, seeks an adjustment of conflicting interests through a reconciliation by compromise, each surrendering something of his absolute freedom so that both may live. To exclude the defendant from blasting to adapt its lot to the contemplated uses, at the instance of the plaintiff, would not be a compromise between conflicting rights, but an extinguishment of the right of the one for the benefit of the other. This sacrifice, we think, the law does not exact. Public policy is promoted by the building up of towns and cities and the improvement of property. Any unnecessary restraint on freedom of action of a property owner hinders this. The law is interested also in the preservation of property and property rights from injury. Will it in this case protect the plaintiff's house by depriving the defendant of his

right to adapt his property to a lawful use, through means necessary, usual and generally harmless?    We think not."

The rule thus laid down has been followed since in New York, though *Hay* v. *The Cohoes Co.* is also regarded as good law and followed on the point actually decided therein.    *Forrester* v. *O'Rourke Construction Co.*, 95 N. Y. Supp. 600; *Page* v. *Dempsey*, 184 N. Y. 245.    The *Booth* case has also been followed in New Jersey, *Simon* v. *Henry*, 62 N. J. L. 486, the New Jersey court remarking that it found no contrary decision.    The point has apparently seldom come before the courts, but in a number of well-considered cases in different States a rule contrary to that adopted by the New York court has been laid down.    *Colton* v. *Onderdonk*, 69 Cal. 155; *Fitz Simons* v. *Braun*, 94 Ill. App. 533, affirmed, 199 Ill. 390; *Chicago* v. *Murdock*, 212 Ill. 9; *Gossett* v. *Southern Railway Co.*, 115 Tenn. 376.

In *Gossett* v. *Southern Railway Co.*, *supra*, the facts are very similar to those of the present case, but the railway company had settled for the physical injuries done to the adjacent premises, and suit had been brought for rendering the plaintiff's home uncomfortable and insecure and virtually compelling the occupants to vacate the premises in consequence of the repeated concussions and loud noises.    The court, after reviewing other Tennessee cases, says in its opinion, at page 385: "The gist of these decisions, so far as applicable to the facts of the present case and the questions here involved, is that a railroad company, in constructing its road, although it may be guilty of no negligence and exercise proper care and caution, will still be liable to adjacent property-owners, if the work done, although necessary to be done, and in fact skillfully constructed, shall result in injury to such property;" and at page 391; "If the plaintiff was driven from his home by the blasting and other operations carried on by the defendants, or his comfort was so interfered with as to lessen the desirability and usable value of his home during the time the work was being prosecuted, for these things the plaintiff should be entitled to recover."

In *Colton* v. *Onderdonk*, *supra*, the court says: "The fact that the defendant used quantities of gunpowder, a violent and dangerous explosive, to blast out rocks upon his own lot, con-

tiguous to another person's, situate in a large city, must be taken as an unreasonable, unusual and unnatural use of his own property, which no care or skill in so doing, can excuse him from being responsible to the plaintiff for the damages he actually did to her dwelling-house as the natural and proximate result of his blasting. For an act which in many cases is in itself lawful becomes unlawful when by it damage has accrued to the property of another. And it would make no material difference whether that damage, resulting proximately and naturally from the act of blasting by the defendant, was caused by rocks thrown against Mrs. Colton's dwelling-house or a concussion of the air around it, which had either damaged or entirely destroyed it.

"The defendant seems by his contention to claim that he had a right to blast rocks with gunpowder on his own lot in San Francisco, even if he had shaken Mrs. Colton's house to ruins, provided he used care and skill in so doing, and although he ought to have known that by such act, which was intrinsically dangerous, the damage would be a necessary, probable or natural consequence. But in this he is mistaken."

In *Fitz Simons* v. *Braun, supra*, the facts were, that a tunnel was being constructed under parts of the city of Chicago, and explosives were used to loosen the rock. Simultaneously with the occurrence of explosions in the tunnel in the vicinity of the plaintiff's building there occurred shaking and vibration of the earth there, and the walls of plaintiff's building were cracked and injured. The court held that the plaintiff could recover. The court, page 539, says: "It would seem absurd that any refinement of reasoning as to nuisance *per se* or as to injury, consequential or by physical invasion, should be permitted to obstruct the natural justice of a rule which would make one who chooses for his own convenience or profit to use agencies which in their probable and natural results will injure the property of others, answerable for loss occasioned by such injuries. Nor are authorities wanting which by analogy at least support the doctrine."

The reasoning of these cases is more satisfactory to us than that of the *Booth* case and those which follow it. We see no valid

reason why recovery should be permitted for damage done by stones, or dirt thrown upon one's premises by the force of an explosion upon adjoining premises, and not be permitted for damage resulting to the same property from a concussion or vibration sent through the earth or the air by the same explosion. There is really as much a physical invasion of the property in one case as there is in the other. The force does the injury in both cases, and the fact that it causes stones or other *debris* to be thrown upon the land in one case, and in the other only operates by vibrations or concussions through the earth or air, seems to us to be immaterial.

It is perhaps true that an action of trespass could not be maintained in the latter case, because there would be no breaking of the close by the entry of any person or thing; but there would seem to be no reason, on principle, why an action of the case could not be maintained when the injury is really of the same character and is caused by the same powers intentionally set in motion by the defendants, knowing that they will be projected through the earth and air and may cause damage to the plaintiff's property. In such case, one who thus causes dangerous forces to pass through another's property should be held liable for the damage directly resulting therefrom. And there is no more reason for requiring that negligence be shown in the one case than in the other. The temporary character of the operations in the course of which dangerous forces are knowingly and intentionally created by a defendant and projected through the plaintiff's property, and the impossibility or grave difficulty of profitably improving the defendant's property otherwise, may be a good reason why a court of equity should not interfere by an injunction unless the resulting damage is very serious, but it is no good reason why the defendant should not be obliged to pay damages caused to others by his operations, as a part of the cost of improving his own property.

The nonsuit was error. The plaintiffs' exception is sustained, and the cause remitted to the Superior Court for a new trial.

*Gardner, Pirce & Thornley, Henry W. Gardner*, for plaintiffs.
*Clifford S. Tower*, for defendants.