## CITY OF MUSKOGEE et al. v. HANCOCK.

No. 4763.   Opinion Filed June 6, 1916.

(158 Pac. 622.)

1.   EMINENT DOMAIN—Public Improvements—"Damaged"—Right to Recover.   Under section 24, art. 2, of the Constitution, providing that "private property shall not be taken or damaged for public use without just compensation," a recovery may be had in all cases where private property is damaged in making an improvement that is public in its nature, such as a city sewer. It is not required that the damages shall be caused by trespass, or an actual physical invasion of the owner's real estate; but if the construction of the sewer is the cause of the damage, though consequential, the owner of the property damaged may recover.

2.   SAME—Nature of Right—Constitutional Provision.   The use of the words "or damaged," in addition to the word "taken," in the

above section of the Constitution, indicates a deliberate purpose not to confine a recovery to cases where there is a physical invasion of the property affected, but to make the test of liability the fact that private property has been "damaged" for the public use, without regard to the means by which the injury was effected.

3.    **SAME—Damages—Right of Recovery.** Where, in the construction of a public sewer in a populous city district, adjoining business property is damaged, the result of concussions or vibrations from explosions of powder or dynamite employed in the work of excavation. a recovery therefor will lie, without regard to the degree of care employed in discharging the blast.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;
R. C. Allen, Judge.*

Action by Virginia Hancock against the City of Muskogee and another. From a judgment for plaintiff, the City brings error. Affirmed.

*S. V. O'Hare* and *James C. Davis,* for plaintiffs in error.

*Charles A. Cook,* for defendant in error.

SHARP, J.   Plaintiff's action is for damages to her four-story brick building, situated near and abutting upon Times alley in the city of Muskogee, which damages, it was claimed, were caused by the said city and F. P. McCormick, while engaged in digging or excavating a ditch for sewer in said alley near plaintiff's building. It was charged that, while engaged in said work, said defendants used large quantities of powder or dynamite, well known to them to be intrinsically dangerous; and that the violent concussions resulting from the explosions of said powder or dynamite violently jarred and shook the plaintiff's building, causing the walls to crack, and the plaster to fall loose therefrom, whereby her said building was greatly and permanently damaged. The trial resulted in

a verdict for plaintiff in the sum of $500, to reverse which defendant city brings error.

The several assignments of error may, we think, all be brought within the compass of the legal question presented by the court's refusal to submit to the jury the defendant's requested instruction numbered 2. This instruction reads:

"You are instructed that unless you find by a preponderance of the testimony that the blasting done in said sewer was negligently or carelessly done, that excessive quantities of powder were used in said blasting, that proper care was not observed in the placing of said shots of powder, and that due caution was not used in the firing off of said shots of powder, then your verdict should be for the defendant."

The evidence discloses that the city, under a contract with McCormick, was engaged in constructing a sewer along the alley in the rear, and within some eight feet of plaintiff's building. At this point the ditch dug for laying the sewer main was some nine feet below the surface of the ground. In the work of excavation, dynamite or powder was used in blasting the rock or hard formation, the explosions of which caused the earth upon which plaintiff's building stood to shake and vibrate, by reason whereof the walls of said building were cracked and injured. If it were necessary to plaintiff's recovery that there be evidence that the blasting was carelessly or negligently done, then it was error not to give the instruction requested. If, on the other hand, the defendant's liability is not made to depend upon the question of negligence (of which carelessness is but a legal component), then the court did not err in refusing said instruction.

City of Muskogee et al. v. Hancock.

The general rule that no one has absolute freedom in the use of his property, but is restrained by the coexistence of equal rights in his neighbor to the use of his property, so that each in exercising his right must do no act which causes injury to his neighbor, is so well understood, is so universally recognized, and stands so impregnable in the necessities of the social state, that its vindication by argument would be superfluous. That the city, under the power conferred upon and possessed by it, had the rightful authority to cause the excavation to be made, does not thereby and alone relieve it of liability for damages to the owners of property abutting upon its alleys in which work of a public nature, such as the laying of sewer mains, is carried on. As said in a somewhat analogous case (*Choctaw, O. & G. R. Co. v. Drew*, 37 Okla. 396, 130 Pac. 1149, 44 L. R. A. [N. S.] 38):

"The fact that the law authorized plaintiff in error to acquire a right of way and, where necessary for the purposes named, additional grounds, did not authorize the construction of machine shops, roundhouses, cinder pits, and appurtenances of a like nature, wherever deemed proper, without regard to the property rights of others. Whatever the extent of the authority conferred by the act, it was accompanied by the implied qualification that the works should not be so placed as by their use to unreasonably interfere with, disturb, or destroy the peaceable and comfortable enjoyment of others in their property."

The excavation of the ditch by the means employed, within a few feet of large buildings in a populous city, was intrinsically dangerous, no matter how carefully and skillfully the explosions were conducted. The nature and power of dynamite or blasting powder as an explosive have been demonstrated by universal experience, and it is a matter of common knowedge that their use as an explosive

is intrinsically dangerous, and of this the courts will take judicial notice.    17 Am. & Eng. Enc. Law, 909; *Norwalk Gaslight Co. v. Norwalk,* 63 Conn. 495, 28 Atl. 32; *City of Chicago v. Murdock,* 212 Ill. 9, 72 N. E. 46, 103 Am. St. Rep. 221.

The authorities are in conflict as to the liability of one who by blasting with high and powerful explosives produces severe concussions and vibrations in surrounding earth and air, and so materially damages buildings belonging to others, irrespective of negligence on his part. On the one hand, it is claimed that, since recovery is permitted for damages done by stones or debris thrown upon one's premises by the force of an explosion upon adjoining premises, there can be no good reason in law why recovery should not be allowed for damages resulting to the same property from the concussion or vibration sent through the earth or the air by the same explosion; that there is really as much a physical invasion of the property in one case as there is in the other; and the fact that the explosion causes stones or other debris to be thrown upon the land in one case, and in the other only operates by vibrations or concussions through the earth and air, is of no consequence.    The contrary rule, announced in some jurisdictions, does not appear to be predicated solely on the fact that there is in such case no technical trespass and that the injuries are consequential, but, by some courts, is rested upon the ground of public policy.    According to this rule, if one engaged in blasting upon his own lands invades the premises of another, by throwing stones and debris thereon, he is liable for the resulting injury, but for any other injury, such as may result from concussions or vibrations, or otherwise, there is no liability, unless it is shown that the work was done negligently and that

the injury was the proximate result of such negligence, and that, where the blasting was done according to the usual methods and with reasonable care, no liability attaches.

The better reasoned cases, and the more equitable rule, we think, incline to the view that proof of negligence is unnecessary to establish liability under circumstances such as presented in the case at bar. Whether one who sustains an injury to his property by the blasting of rock by the owner or occupier of coterminous premises, with powder or dynamite, is entitled to damages irrespective of the question of negligence in making or firing the blast, depends, in the view taken by many of the courts, upon the nature of the injury. it is said in Thompson on Negligence, section 764. Under the second proposition of said paragraph, the author says:

"Where the work of blasting is done in a situation where it is necessarily dangerous to the public, as in a thickly settled portion of a city, whereby a person is killed or injured, damages are recoverable for such injury or death, without proof of negligence, notwithstanding proof that the person or corporation so firing the blast employed skillful and experienced men, and exercised the highest degree of care. The reason is that in such a case the work itself is so inherently dangerous that the doing of it, no matter how careful, is of itself negligence; so that no amount of care in doing the negligent act will excuse the actor from the responsibility of the consequences which grow from it. The person firing the blast under such circumstances will be liable to an adjacent owner whose dwelling is thereby injured, whether the injury proceed from the impact of rocks thrown against it, or from atmospheric concussion."

Of this rule it is said in Sutherland on Damages, section 1010:

"There is a disposition to extend the scope of actions for trespass so as to include damages done to property by concussion or vibration of the earth through the use of powerful explosives which are intrinsically dangerous, regardless of the skill used. In a case in which a stone was thrown by a blast against a building, the city for which the work was being done was liable for the injury resulting to the building. In a later case, in which there was no actual invasion of the plaintiff's property, all the damage being done by concussion or vibration caused by explosives used in a tunnel, the same court said, referring to the case: It is true that in that case there was an actual invasion of the property of the plaintiff, the explosion having precipitated a rock against his building; but liability for injuries caused by actual invasion of the property or by the concussion or vibration of the earth or air are within the doctrine there announced. If one who, for his own purposes and profit, undertakes to perform a work by means of explosives, inherently dangerous to the property of another, should be held liable for an injury occasioned by any substance cast by these explosives on the property of such other, it is only by the merest subtlety of reasoning he should be held not liable to respond for equal or greater damages caused by concussion of the air or of the earth. As will be seen by the note, there are courts of high standing which do not fully acquiesce in this doctrine."

The rule of liability is thus stated in 19 Cyc. 7:

"It may be said to be the rule that one who in blasting upon his premises casts rocks or other debris upon the land of another is liable for such invasion, regardless of the degree of care or skill used in doing the work. The courts in some cases recognize a distinction between an injury caused by blasting debris directly upon the property of another, and by injuring it from vibrations in the air or earth, caused by the blast, holding that in the latter case it is necessary, to recover for the injury, to show that the work was done negligently or carelessly."

Of the rule attaching a liability for casting rocks or other objects upon the land of another, it is said in Shearman and Redfield on Negligence (6th Ed.) section 688a:

"The rule is universal that one who, by blasting upon his own land, causes rocks or other physical objects to be thrown upon an adjacent highway, or upon land of another, causing injury to persons or property, is guilty of a trespass, and is liable for the injuries inflicted, without proof of negligence on his part, either in charging or in firing the blast."

The text appears to be borne out by the authorities very generally, including those states where no recovery, except upon proof of negligence, is permitted, unless it be shown that there was a physical invasion of plaintiff's property. *Hay v. Cohoes,* 2 N. Y. 159, 51 Am. Dec. 279; *Booth v. Rome, W. & O. R. Co.,* 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552, and authorities cited.

The rule established by the New York decisions, and in those states adopting the rule of nonliability on account of damages occasioned by concussions or vibrations, is in our judgment unsound. The agency employed in either case being the same, it is, as frequently said, the merest subtlety of reasoning that a recovery should be allowed in the one instance and denied in the other. To sustain the view, a recovery would lie, without proof of negligence, for a window broken by a rock hurled a great distance by an explosion, but would be denied for the total destruction of a building immediately adjoining the work, caused by vibration or concussion, unless negligence was proven.

After reviewing a number of authorities on both sides of the question, it was said in a leading case *(Fitzsimmons v. Braun et al.,* 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421):

"Though the law as to the liability arising in such instances does not seem to have been harmoniously declared in the courts of the different states to which we have referred, the rule in this jurisdiction was indicated by this court in the case of *Joliet v. Harwood*, 86 Ill. 110, 29 Am. Rep. 17. In that case it appeared that it was necessary, in the construction of a public work, that blasting of rocks should be done in a public street of the city. The contractor used all due care, skill and caution in performing the work of blasting. A stone was thrown by the blast against a building of the plaintiff, and injury thereby caused. Judgment was given against the city, and, in affirming, we said: 'In this case the work which the contractor was required by the city to do was * * * done. The right of recovery in this case does not rest upon a charge of negligence on the part of the contractor. It rests upon the fact that the city caused work to be done which was intrinsically dangerous, the natural (though not the necessary) consequence of which was the injury to plaintiff's property. In such case the city is responsible.' It is true that in that case there was an actual invasion of the property of the plaintiff, the explosion having precipitated a rock against his building; but liability for injuries caused by actual invasion of the property, or by the concussion or vibration of the earth or air, are within the doctrine there announced. If one who, for his own purpose and profit, undertakes to perform a work, by means of explosives, inherently dangerous to the property of another, should be held liable for an injury occasioned by any substance cast by the explosives on the property of such other, it is only by the merest subtlety of reasoning he should be held not liable to respond for equal or greater damage caused by the concussion of the air or of the earth. There is no ground of substantial or practical distinction."

Among the early decisions announcing the rule of liability without proof of negligence is that of *Colton v. Ondertonk et al.*, 69 Cal. 159, 10 Pac. 395, 58 Am. Rep. 556, where it was held that there was no material difference

whether the damage was the result of rocks thrown against the plaintiff's house, or was the result of a concussion of the air; that one who owned a lot situated in a large city, and adjoining the dwelling of another, and who used large quantities of gunpowder to blast out rock on his lot, was responsible for the damages done to such dwelling as the natural and proximate result of his blasting; and that he could not excuse himself from liability for such use of his property by showing any degree of care or skill in discharging the blast. A well-considered case, which reviews many of the authorities, is that of *Hickey v. McCabe*, 30 R. I. 346, 75 Atl. 404, 27 L. R. A. (N. S.) '425, 19 Ann. Cas. 783, in which it was held that negligence need not be shown to render one blasting in a tunnel liable for injuries to the buildings on neighboring property, through vibration caused by the blasts, although no material was thrown upon the property, so that there was no actual breaking of the close. At the end of its review of the authorities, the court said:

"The reasoning of these cases is more satisfactory to us than that of the Booth Case and those which follow it. We see no valid reason why recovery should be permitted for damage done by stones or dirt thrown upon one's premises by the force of an explosion upon adjoining premises, and not be permitted for damage resulting to the same property from a concussion or vibration sent through the earth or the air by the same explosion. There is really as much a physical invasion of the property in one case as there is in the other. The force does the injury in both cases, and the fact that it causes stones or other debris to be thrown upon the land in one case, and in the other only operates by vibrations or concussions through the earth or air, seems to us to be immaterial. It is * * * true that an action in trespass could not be maintained in the latter case, because there would be no breaking of the

close by the entry of any person or thing; but there would seem to be no reason or principle why an action on the case could not be maintained when the injury is really of the same character and is caused by the same powers intentionally set in motion by the defendants, knowing that they will be projected through the earth and air and may cause damage to the plaintiff's property.. In such case, one who thus causes dangerous forces to pass through another's property should be held liable for the damage directly resulting therefrom, and there is no more reason for requiring that negligence be shown in the one case than in the other."

Another opinion sustaining this view and reviewing the authorities is *Longtin v. Powell et al.,* 30 Mont. 306, 76 Pac. 699, 65 L. R. A. 655, 104 Am. St. Rep. 726, 2 Ann. Cas. 198, where it was said:

"Blasting operations carried on continuously for a year or more upon lots platted for city purposes, and resulting, from the quantity of explosives used, in injuries to other property, constitute *prima facie* a nuisance, and those maintaining the same will be held liable, even though no negligence on their part be alleged or proved, for damages to the premises of another occasioned by the vibrations of the earth or concussions of the air resulting from the blasting."

The case of *Bradford Glycerine Co. v. St. Mary's Woolen Mfg. Co.,* 60 Ohio St. 560, 54 N. E. 528, 45 L. R. A. 658, 71 Am. St. Rep. 740, recognizes the view that liability in such cases is not restricted to an actual invasion of the property, but that damages for consequential injuries may be recovered. The same principle is recognized and applied in *Gossett v. Southern R. Co.,* 115 Tenn. 376, 89 S. W. 737, 1 L. R. A. (N. S.) 97, 112 Am. St. Rep. 846. In *Johnson v. Kansas City Terminal Co.,* 182 Mo. App. 349, 170 S. W. 456, after referring to the New York case

of *Hay v. Cohoes County*, 2 N. Y. 159, 51 Am. Dec. 279, and quoting from the opinion in *Booth v. Rome, W. & O. R. Co.*, 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 37 Am. St. Rep. 552, the leading New York case, it was said:

"Inferentially, at least, the opinion approved the doctrine of the Hay Case, and, on careful analysis, the decision that the injury of the plaintiff in the Booth Case was *damnum absque injuria* will be found to rest upon the startling proposition that one who exercises reasonable care in blasting rock on his own premises for a useful purpose may shake his neighbor's house down, but must not batter it with stones or other missiles; that the one act would not constitute a physical invasion or 'technical trespass,' while the other would. We find ourselves unable to grasp this distinction, and we cannot sanction the view that a proprietor may keep within the bounds of proprietary rights and perform his duty towards his neighbor by liberating destructive forces which he knows will invade his neighbor's land and do havoc there. The thrown missile is but an instrument of the lawless force which itself is the invader. By whatever means it intrudes, it is none the less a trespasser, and the person who calls it into being cannot be heard to excuse himself on the plea that he needed its services in his own affairs, which could not properly be served otherwise."

In the syllabus it was held that, where residence property in the vicinity of a railroad track was injured by being shaken by blasting done by the railroad company, the company was liable, though the blasting was necessary to needed improvements, and was done without negligence. The opinion is supported by a number of earlier opinions of the same court.

To hold, notwithstanding the partial destruction or damage to plaintiff's property, that she is without a remedy in law, would be, it would seem, violative of section 24, art. 2, of the Constitution, providing that "private

property shall not be taken or damaged for public use without just compensation." "If private property is damaged for the public benefit, the public should make good the loss to the individual," it was said in *Farnandis v. Great Northern R. Co.*, 41 Wash. 486, 84 Pac. 18, 5 L. R. A. (N. S.) 1086, 111 Am. St. Rep. 1027, in the Constitution of which state the same provision for compensation 'for damages to private property is found.   To disallow damages in such cases would be to fail to give consideration or effect to this salutary provision of our Constitution.   We know of no authority of a state having a like constitutional provision which denies a recovery under circumstances such as here involved.

Referring to the word "damage" in the Illinois Constitution of 1870, in *City of Chicago v. Taylor*, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638, after reviewing at length the decisions of the Supreme Court of Illinois, both under the Constitution of 1848 and those that had arisen under the Constitution of 1870, and particularly the cases of *Rigney v. Chicago*, 102 Ill. 64, and *Chicago & W. I. R. Co. v. Ayres*, 106 Ill. 511, the court said:

"We concur in that interpretation.   The use of word 'damage' in the clause providing for compensation to owners of private property appropriated to public use, could have been with no other intention than that expressed by the state court.   Such a change in the organic law of the state was not meaningless; but it would be meaningless if it should be adjudged that the Constitution of 1870 gave no greater or additional security to private property, sought to be appropriated to public use, than was guaranteed by the former Constitution."

In that case the action was to recover damages sustained by reason of the construction by the city of a viaduct in the immediate vicinity of plaintiff's lot.   Prior to

its construction the lot in question had been used as a coal-yard, having upon it sheds, machinery, engines, boilers, tracks, and other contrivances required in the business of buying, storing, and selling coal. The premises had long been used for that purpose, and were particularly well adapted for the business. There was evidence tending to show that by reason of the construction of the viaduct the actual market value of the lot for the purposes for which it was specially adapted, and for any other purpose for which it was likely to be used, was materially diminished, and access to it at places greatly obstructed, and at some points practically cut off. In the syllabus it was held that, under the provision of the Illinois Constitution of 1870 that "private property shall not be taken or damaged for public use without just compensation" (article 2, sec. 13), a recovery could be had in all cases where private property had sustained a substantial damage by the making and using of an improvement public in its character; that it was not necessary that the damage should be caused by a trespass or an actual physical invasion of the owner's real estate, but, if the construction and operation of the railroad or other improvement was the cause of the damage, though consequential, the owner could recover. It was further said that the introduction of the word "damage" into the Constitution indicated a deliberate purpose to abolish the old test of direct physical injury to the property affected.

More need not be said in reaching the conclusion that the judgment of the trial court should be affirmed. Every reason impels us to conclude that plaintiff's right to recover cannot be made to rest upon the defendant's want of care, or negligence, in the construction of the sewer. Whatever may be the reasons in other jurisdictions for de-

nying a recovery unless there has been a physical invasion of the property damaged, they can have no place under a Constitution guaranteeing to property owners the right to a just compensation for private property damaged for public use.

The judgment of the trial court is affirmed.

All the Justices concur, except _THACKER, J., absent and not participating.