## CITY OF WEWOKA v. MAINARD et al.

No. 20776. Opinion Filed Feb. 16, 1932.

V. R. Biggers, City Atty., for plaintiff in error.

Allen G. Nichols and Guy L. Trimble, for defendants in error.

KORNEGAY, J. This proceeding in error was brought by the city of Wewoka to reverse the decision of the district court of Seminole county awarding damages for overflowing by water of 40 acres of land in which plaintiffs owned the mineral rights. Of the land, 20 acres was overflowed by the waters of a lake created by defendant by a dam below and a levee over the land.

The petition in the case was filed on the 17th of October, 1928. It was charged that the mineral rights destroyed were worth $2,000, and judgment was asked for that sum. A demurrer was filed for insufficiency of facts, which was overruled on the 26th of November, 1928, and was followed by an answer, claimed to be full and complete, which denied every material allegation in the petition. A special judge was assigned, and the cause was submitted to him, jury being waived. At the opening of the case, an objection was raised to the introduction of any testimony, and it developed that a demurrer had been overruled and the objection was accordingly overruled.

In the testimony there was shown as Exhibit 1 an instrument that was denominated "sale of oil and gas royalty," purported to be executed by the owners of the land to E. E. Mainard and Ben Scrynopsky, plaintiffs below, conveying an undivided one-eighth interest in all the oil, gas, coal, and other mineral, now or at any time hereafter, lying in or under the northwest quarter of the northwest quarter of section 12, and the northwest quarter of the southwest quarter of section 13, township 8 north, range 7 east, also "an undivided one-eighth interest in all my right, title and estate under and by virtue of any oil and gas mining leases, or other mineral lease, now or hereafter existing upon said premises, or any part thereof, including all rents and royalties accrued; and also the perpetual and irrevocable right, privilege and easement of entering upon said lands and searching for, drilling wells, sinking shafts, mining, digging, extracting, taking and carrying away all of the oil, gas, coal, and other minerals in or under said lands, or that may be found therein or thereunder; and also the right to possession and use of so much of said premises at all times as may be necessary to the practical carrying out of the purposes and provisions of this grant.

"To have and to hold, all the afore granted estate, property and easement, together with all and singular the rights, privileges and hereditaments thereunder belonging or appertaining, unto the said E. E. Mainard and Ben Scrynopsky, their heirs, successors and assigns, in fee simple forever."

The instrument was executed by Rina Henderson and Bud Henderson, acknowledged on July 6, 1925, and recorded on the 7th of July, 1925, in the office of the county clerk of Seminole county. At that time no

lake had been created, or rights acquired in the land by the city. By reason of creating the lake about one-half of the land was under water, and a levee was on part of the land, and the slope on the remainder of it was such that the drainage would run into the lake. The price paid for this right was $150 an acre, one of the plaintiffs claimed, testifying as a witness. He stated that its sale value would be $150 to $200 per acre, and that by reason of the city locating its waterworks where it did, he was not able to operate or make a lease to operate the land for the mineral in it, and the city passed an ordinance to protect the water from pollution, and by virtue of the city's action in flooding a part of it, it had rendered his interest in the land worthless. There were other witnesses, including the original owner, who claimed that he had been paid $150 an acre for the mineral rights.

A witness by the name of Tiker said that the value of the mineral rights was at least $150 an acre. From the evidence, he had been dealing in leases for some time in that locality, and he stated that by virtue of the lake being there the mineral rights had become valueless. With the conclusion of Tiker's testimony a demurrer was interposed and overruled. There was a stipulation that the city acquired its water rights after the other rights were acquired.

Further testimony was introduced, after reopening the case on behalf of the plaintiff, and the attorneys of each side testified. The defendant's attorney identified the city ordinance making it an offense to pollute the water of the lake or disturb anything connected with the lake, and prescribing the price for frog hunting, duck hunting, fishing, boating, etc., on the lake, and regulating the matter of using boats thereon, and prescribing penalties for violating the ordinance.

The city attorney stated that in the case of interference, under advice of the council, he would proceed at law to prevent the pollution.

Paul Cole, who was a trustee of the Tiker rights in the neighborhood, testified that the building of the lake had destroyed the lease values, and chances to make leases on the land, and that leases at the time of the locating of the waterworks were selling all the may from $100 to $150 per acre.

An agent of the Magnolia Company, by the name of Dunaway, testified, and the practical result of his testimony was that the lease value was destroyed. There was some examination about the drilling of closed wells on it, but the practical effect of his testimony was that the oil value had been taken away from the land by the building of the lake.

It appears that the defendant offered no testimony, relying on the fact of no legal liability being established, and both sides produced authorities and submitted them to the court, and the court on the 13th of March, 1929, overruled the demurrer that was interposed, and found that the plaintiffs had sustained a loss of $750 on account of the things complained of in their petition. This was followed by a motion for new trial, and its being overruled, and the case brought here with assignments of error.

The assignments of error are based upon insufficiency of evidence, and the recovery being too much, and the judgment being contrary to law and the evidence, and errors occurring in the overruling of the various demurrers, and the rendition of judgment and the failure to render judgment for the plaintiff in error.

A brief has been filed on behalf of the plaintiff in error, reciting the salient points in the evidence, and urging two propositions of law, the first being that in the construction of a dam the city was exercising a governmental function, and because it properly constructed the dam, that it was not liable for the consequential damages, and the second proposition being in the construction of the dam the city was doing what it had a lawful right to do, and therefore, in the absence of negligence, it cannot be held answerable in damages for the doing of that which it had a right to do. A case from Kentucky, Kirch v. City of Louisville, 101 S. W. 373, is cited, and a case of the City of Mangum v. Todd, 42 Okla. 343, 141 P. 266, is also cited, and some cases from Texas are cited, and a Texas constitutional provision is cited, and the early case of Kolachny v. Galbreath, 26 Okla. 772, 110 P. 902, is cited, and Wright et al. v. Carter Oil Co., 97 Okla. 46, 223 P. 835, is cited, and also some cases from the state of Washington, and especially Nelson v. City of Spokane (Wash.) 176 Pac. 149. The case of City of Richmond v. Test, 48 N. E. 610, is cited, and reference is had to some other Indiana cases, and some Massachusetts cases, and extracts are made from them and also some federal cases.

An examination has been had of the cases cited, but we do not think that they govern in this case, or in any wise militate against the judgment rendered, save the case of Nelson v. City of Spokane, cited above, which our Constitution forbids our following. Un-

questionably the property of the plaintiffs below, the defendants in error here, has been practically destroyed as a result of the flooding of part of the land, and by virtue of the threat to protect the watershed from pollution of it by things that would naturally escape and flow from an oil well. For all practical purposes the overflowed property has been totally taken.

The Constitution of the state of Oklahoma goes further than some Constitutions do on the proposition of taking private property for public purposes, and in a great many respects gets rid of some of the old ideas that whenever the public wanted anything it was entitled to it without compensation, and goes further than most any other Constitution in the protection of private rights. Under the general condemnation rules, immediate benefit arising from improvements made for public purposes could be taken into the account in fixing damages occurring by reason of taking or damaging private property for public use. This is modified by our Constitution on the subject, as follows:

"Sec. 24. Private property shall not be taken or damaged for public use without just compensation. Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commission shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question."

Under these provisions, we think it clear in this case that the city is liable for the actual damage to the property of plaintiffs occasioned by flooding the land permanently with water and by erection of the levee across it. Some argument is made as to what an oil and gas lease is, and its not being property. However, the expressions of this court on the subject have been very much varied.

In a proceeding to tax oil and gas leases, it was declared in the case of In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 P. 997, that oil and gas leases were not subject to tax, and the unique phrase is found in that case describing an oil and gas lease as the "illimitable vista of hope." Later on our court, by reason of the fugacious character of oil and gas, in Kolachny v. Galbreath, 26 Okla. 772, 110 P. 902, announced that a lease for that purpose would not support an action in ejectment to recover possession for prospect purposes. Brown v. Wilson, 58 Okla. 392, 160 P. 94, was later before the court. Under the decision in that case, the continuation of right of an oil company on a lease was denied. The court was divided 3 to 2, and "or" and "unless" leases acquired considerable importance. Since then the battles have waged fierce in this court over oil leases. Large damages for the pollution of water supplies have recently been adjudged in the Pawnee case. In the estimation of most men, a right to extract the oil and gas is now classed as a very valuable species of property. Owing, however, to the dying character of oil leases, evidently the plaintiffs here saw fit to fortify themselves a little better than to just share in the right to explore for oil and gas, and bought from the owner the one-eighth of the oil and gas, with a right to share in all leases.

We therefore think the the right of the plaintiffs in this property was very well marked, and whatever the value was that was taken away from plaintiffs' interest by flooding the land, the plaintiffs were entitled to. The court below found only $750. Our own decisions on the subject carry out our Constitution, and hold that a city is not exempt from payment when it is taking land for the purpose of waterworks. Among other authorities, we might enumerate the following: Lewis on Eminent Domain (2nd Ed.) par. 67, and cases there cited. Fretz v. City of Edmond, 66 Okla. 262, 168 P. 800, and the long lines of cases there cited. Also McQuillen on Municipal Corporations, par. 3591, and Abbott on Municipal Corporations, par. 957.

We think, under the conditions shown in this record, that the judgment rendered in favor of the plaintiffs was just, and in no

way violates the law, and the judgment is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. McNEILL, J., absent.

Note.—See under (1) 19 R. C. L. 1097.