The CITY OF PURCELL, Oklahoma, a municipal corporation, Plaintiff in Error,

v.

Russell HUBBARD, Defendant in Error.

No. 40681.

Supreme Court of Oklahoma.

April 20, 1965.

Norman A. Smith, Purcell, for plaintiff in error.

Hardin Ballard and James H. Ballard, Purcell, for defendant in error.

BERRY, Justice.

The City of Purcell, herein referred to as defendant, or the City, has appealed from a judgment rendered upon a jury verdict in plaintiff's favor, in an action brought to recover damages to realty. A single issue is dispositive of the appeal, so that extended recitation of the pleadings and evidence, and/or discussion of the different assignments of error is unnecessary.

Plaintiff sued to recover damages occasioned by fire which escaped onto his property from a particularly described, contiguous tract owned by defendant. There was an open ditch upon defendant's land which was used in disposing of refuse collected from homes and business establishments within the City. Disposal was accomplished by burning the collected refuse, or garbage, in the open ditch. Fire escaped (from defendant's property) onto ,plaintiff's land, resulting in destruction of trees, fences and pasture grass. The jury returned a verdict for plaintiff and allowed damages for loss of pasture grass and fence posts.

The petition charged the fire originated upon defendant's premises, having been set by defendant's employees in the usual course of employment. During trial and now on appeal plaintiff's asserted position is that negligence was neither pleaded nor relied upon, because the action was not based upon tort. Rather, it is plaintiff's contention that his claim is derived entirely from the Constitution, Art. II, Sec. 24, which provides in part: "Private property shall not be taken or damaged for public use without just compensation. * * *"

At all stages of the proceedings defendant preserved the question of immunity of a municipal corporation from liability for damages resulting from the City's discharge of a governmental function. Four contentions are urged by defendant on appeal, each of which is based upon the general rule of immunity above mentioned. Determination of the issue primarily involves consideration of these questions:

1. Did the injury sued for result from defendant's performance of a governmental function?

2. Was the injury incurred a taking for "public use" within contemplation of the constitutional provision?

As concerns the first question, there is some diversity of opinion expressed by various courts. The decided weight of authority is that collection and disposition of garbage by a municipality is a governmental function, as may be observed in the following annotations: 14 A.L.R. 1473; 32 A.L.R. 988; 52 A.L.R. 187; 60 A.L.R. 101; 156 A.L.R. 692; 38 Am.Jur., Municipal Corporations, Sec. 312. The precise issue was settled in this jurisdiction by our decision in Oklahoma City v. Baldwin, 133 Okl. 289, 272 P. 453, in which the syllabus states:

"1. A city has two classes of powers —the one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, quasi private, conferred upon it, not for the purpose of governing its people, but for the private advantage of the inhabitants of the city and of the city itself as a legal personality.

"2. In the collection and disposition of garbage, a city acts for the public health, and discharges a governmental function. In these acts it is an agent or arm of the commonwealth, and for that reason is absolved from liability for the negligence of its employees."

There can be no doubt but that the injury upon which plaintiff's case was based resulted from defendant's performance of a governmental function.

The second inquiry involves the question whether the injury suffered by plaintiff constituted taking or damaging of private property for public use within the meaning of Art. II, Sec. 24. This section provides:

"Private property shall not be taken or damaged for public use without just compensation. Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law. The commissioners shall not be appointed by any judge or court without reasonable notice having been served upon all parties in interest. The commissioners shall be selected from the regular jury list of names prepared and made as the Legislature shall provide. Any party aggrieved shall have the right of appeal, without bond, and trial by jury in a court of record. Until the compensation shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner divested. When possession is taken of property condemned for any public use, the owner shall be entitled to the immediate receipt of the compensation awarded, without prejudice to the right of either party to prosecute further proceedings for the judicial determination of the sufficiency or insufficiency of such compensation. The fee of land taken by common carriers for right of way, without the consent of the owner, shall remain in such owner subject only to the use for which it is taken. In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question."

Upon authority of the text rule in 38 Am. Jur., Municipal Corporations, Sec. 572, and the rule announced in City of Muskogee v. Hancock, 58 Okl. 1, 158 P. 622, and later decisions to be discussed, plaintiff concludes that the damaging of his property resulted from a public use. This conclusion is reached by application of the syllabus in the Hancock case, which stated:

"Under section 24, art. 2 of the Constitution, providing that 'private property shall not be taken or damaged for public use without just compensation,' a recovery may be had in all cases where private property is damaged in making an improvement that is public in its nature, such as a city sewer. It is not required that the damages shall be caused by trespass, or an actual physical invasion of the owner's real estate; but if the construction of the sewer is the cause of the damage, though consequential, the owner of the property damaged may recover."

Later adherence to such rule may be found in Chicago, R. I. & P. Ry. Co. v. Prigmore, 180 Okl. 124, 68 P.2d 90; City of Wewoka v. Mainard, 155 Okl. 156, 8 P.2d 676; and Page v. Oklahoma City, 129 Okl. 28, 263 P. 448, all relied upon by plaintiff. Analysis of these decisions reveals they do not support plaintiff's claim that the damage to his property resulted from a public use, as hereafter will be shown.

The Prigmore case recognized that recovery of damages may be allowed under Sec. 24 although there is no physical invasion of the property and the damage is only temporary. However, Syllabus 2 specifies this limitation:

"In an action to recover damages arising out of the construction of an

underpass by a railroad, the mere incidental inconvenience to an abutting property owner or an injury consequential in nature, or one that is remote or far removed and such as is suffered by the community in general, is not recoverable; but on the other hand, if the injury is different in kind from that suffered by the community in general and is such that the ingress and egress to and from the plaintiff's property is cut off or materially affected, then he suffers a special damage peculiar to himself for which an action will lie."

In the Mainard case, supra, the city acted in its governmental capacity in building a lake, construction and maintenance thereof effectively destroying possibility of plaintiffs' operating upon the land to extract their mineral interests. This was held to constitute a taking within the meaning and purpose of Sec. 24, supra, since the condition was permanent and the evidence showed that for practical purposes the land "had been totally taken."

Page v. Oklahoma City, supra, involved creation of a nuisance resulting from emptying sewage upon plaintiff's land, thereby rendering the land uninhabitable and practically worthless. In reversing a judgment absolving the city from liability, it was held that the value had been destroyed although the property was not "taken out and out for public use," and under the constitutional provision the plaintiff was entitled to compensation for loss sustained by public use of the property.

The Page case relied upon City of Muskogee v. Hancock and City of Cushing v. Luke, 82 Okl. 189, 199 P. 578. The Luke case also involved discharge of sewage upon plaintiff's property, "thereby creating and maintaining a nuisance" detrimental to the landowner and diminishing the value of the land. The result in that case was placed solely upon liability of a municipal corporation in money damages arising from maintenance of such nuisance. The case

cited and discussed other decisions, including Markwardt v. City of Guthrie, 18 Okl. 32, 90 P. 26, 9 L.R.A.,N.S., 1150, 11 Ann.Cas. 581.

In the Markwardt case this Court for the first time considered the problem of application of the constitutional provision to a situation involving taking or damaging private property for public use by creation of a nuisance. The decision was based upon the rule applied by other courts and the United States Supreme Court. We recognized that by weight of authority the gravamen of such an action is not derived from negligent or unskillful construction. Rather, the action is derived wholly from creation and maintenance of a public nuisance which is injurious to public health and welfare. The point made by the reasoning and result of such cases simply is that where taking of property for a public use results in creation or maintenance of a nuisance no immunity extends to a municipal corporation.

City of Muskogee v. Hancock, supra, is said to be the original and controlling case upon the question involved. The rule therein stated, after review of cases from other courts, is that damages are recoverable for injury to property resulting from a city's construction of an improvement which is public in nature. Different courts have found various grounds for affixing liability in such cases. The rule in the Hancock case is based upon the proposition that blasting (in course of construction of public improvements) is necessarily and inherently dangerous, and one who blasts so near another's property as to be liable to cause damage must assume responsibility for damage resulting therefrom. See 92 A.L.R. 741; 20 A.L.R.2d 1372. Liability attaches without regard to whether negligence is involved. The rule applied in this jurisdiction in ultimate consideration does not depend strictly upon the constitutional provision.

The conclusion reached in the Hancock case, supra, was explained and distinguish-

ed in Stowell v. Engelson et al., 201 Okl. 105, 201 P.2d 919, in this manner:

"If the right of action arose under the constitutional provision it would, as contended, negative the idea that the action sounded in tort but at the same time it would negative the existence of any right of action in the plaintiffs against the defendant. * * *"

The question then arises as to whether damage resulting from an isolated act or omission of a municipality engaged in exercise of a governmental function can be considered a public use within the meaning of Sec. 24, supra. In state ex rel. Manhattan Const. Co. v. Barnes, 22 Okl. 191, 97 P. 997, the Court, in defining this term, quoted from Cooley's Constitutional Limitations (7th Ed.) p. 766: "The public use implies a possession, occupation, and enjoyment of the land by the public at large, or by public agencies." The Court further stated at p. 999:

"* * * And we find, in Gilmer v. Lime Point, 18 Cal. [229] 239, citing an early New York case, a similar rule laid down as a criterion by which a 'public use' may be determined in the following language: 'If the state or sovereign power take the property and keep control over it, so as to compel its devotion to the purpose avowed in expropriating it, then the taking is for a public use. If not, the taking is for a private use, and by implication forbidden by the organic law.'"

We conclude the damage to plaintiff herein cannot, in any manner, be termed a taking or damaging for public use within any accepted definition or application of the term. There was no taking of possession, occupation or enjoyment by the public. The most that could be said was that a trespass was committed.

Additionally, we are of the opinion the plain terms of Sec. 24, supra, preclude the interpretation plaintiff seeks to place thereon. The language of the provision shows the legislative intent to provide the method, means and manner by which private property may be taken for public use. The language explicitly reveals the proviso was intended to prescribe the limits within which the right of eminent domain could be exercised in acquisition of private property. The only recognized departure from acquisition by exercise of that power arises in situations such as are disclosed in Page v. Oklahoma City, supra, and City of Wewoka v. Mainard, supra. Physical invasion and destruction of the landowner's property results from construction or maintenance of a public improvement which "takes" the owner's property to the extent that it becomes unusable, or severely deteriorates in value. The taking occurs without prior exercise of the right of eminent domain, undoubtedly because in such cases it is not foreseen that exercise of a proper governmental power may create a nuisance. In these cases a right of action arises, whereby the landowner is permitted to recover damages for loss, or diminution in value of his property upon the same basis as would have applied had the municipality originally exercised the right of eminent domain. The same result may be reached by exercise of the rights extended to an injured landowner under the provisions of 66 O.S.1961, §§ 51–63, inclusive, to recover his damages by what commonly is designated as reverse condemnation. See Incorporated Town of Pittsburg v. Cochrane, 200 Okl. 497, 197 P. 2d 287.

The rule of immunity of municipal corporations from liability for damages for misfeasance or nonfeasance arising out of exercise of governmental functions is recognized and applied in this jurisdiction. Oklahoma City v. Baldwin, supra; Pool v. City of Cushing et al., 184 Okl. 577, 89 P. 2d 294; City of Tulsa v. Wheetley, 187 Okl. 155, 101 P.2d 834. In the Pool case, supra, both the rule relative to immunity from liability in the conduct of governmental affairs, as contrasted with non-immunity where the municipality acts in proprie-

tary affairs, and the reasons therefor are stated:

"(1) The rule as to immunity in the adoption of a plan applies only to governmental functions. Some of the courts say that the reason for the rule is that in the discharge of governmental affairs the municipality is merely a branch of the state and therefore a part of the state in that regard and thus not liable as a matter of public policy (City of Kokomo v. Loy, 185 Ind. 18, 22, 112 N.E. 994); that the rule is one of public policy to protect public funds and public property so that they will not be diverted from the work of government (O'Connell v. Merchants' etc. Co., 167 Ky. 468, 180 S.W. 845, L.R.A.1916D, 508). An additional reason which may be suggested is that governmental functions are forced upon a municipality, the municipal authorities often have little or no choice as to whether they will perform these functions, and that therefore municipalities should not be penalized for mere errors in judgment committed in the exercise of such compulsory function, which, also, is legislative or judicial.

"Whatever the reasons underlying the rule, the authorities are agreed that the rule applies, when it does apply, only to the adoption of plans in the performance of governmental functions and not to the adoption of plans for the performance of proprietary functions. For a definition of the two kinds of functions, and the distinction between them, see Public Service Co. of Oklahoma v. City of Tulsa, 174 Okl. 58, 50 P.2d 166."

Assuming plaintiff's contention to be sound, a citizen whose home is damaged, and who at the same time receives personal injuries from a fire truck making a call in the interest of public safety, would find himself in a contradictory position. Damages could be recovered from the municipality for injury to the realty, but no right of action would exist for the personal injuries resulting from the same occurrence. This anomaly would be the ultimate result of acceptance of plaintiff's construction of Sec. 24.

The generally accepted rule of law has been that a municipality exercising governmental functions represents the sovereignty of the state; and, absent statutory enactment waiving or removing such immunity, the municipality cannot be liable in damages for injury resulting from misfeasance or non feasance in discharge of such governmental functions. See 38 Am. Jur., Municipal Corporations, Sec. 571 et seq. This principle was recognized and applied in Oklahoma City v. Baldwin, supra, and still remains the settled law in this State.

The judgment is reversed and the cause remanded to the trial court with directions to set aside the judgment and sustain defendant's demurrer to the evidence and dismiss the action.