STATE ex rel. FULTON v. STATE ELECTION BOARD et al.

No. 25591.   June 6, 1934.

Rehearing Denied June 19, 1934.

V. P. Crowe and Geo. F. Short, for plaintiff.

J. Berry King, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for State Election Board.

J. O. Counts, for defendant Elmer L. Fulton.

BAYLESS, J. This is an original action commenced in this court by the State of Oklahoma on the relation of G. B. Fulton wherein he seeks a writ of mandamus requiring and compelling the defendant, the State Election Board of the State of Oklahoma, to strike from the ballots for the primary election the name of Elmer L. Fulton as a candidate for the Democratic nomination for the office of Justice of the Supreme Court from the Third Supreme Court Judicial District of the State of Oklahoma and to require the State Election Board to enter an order declaring the counter petition filed by one Elmer L. Fulton with the State Election Board under section 5763, O. S. 1931, to be insufficient. On request of the defendant, the State Election Board, this court made Elmer L. Fulton a party defendant in this cause. The matter is submitted for our consideration on the petition and brief of the relator. G. B. Fulton, and the answers and briefs of the State Election Board and the defendant, Elmer L. Fulton. In this opinion, G. B. Fulton will be referred to as relator; the defendant, State Election Board, as the Election Board, and the defendant, Elmer L. Fulton, as defendant.

We are called upon to determine the constitutionality and construe certain provisions of chapter 98, S. L. 1927 (sec. 5763, O. S. 1931), it being the contention of the relator that the office of Justice of the Supreme Court is a state office within the meaning of said act, and it being the contention of the defendant that said act is unconstitutional in that it violates section 57, art. 5, of the Constitution of Oklahoma.

From the pleadings and the admissions of the parties, it appears that the relator is and has been for a number of years a practicing attorney residing in Oklahoma City and that he has served as an Assistant Attorney General of the State of Oklahoma; that the defendant, Elmer L. Fulton, is a practicing attorney and is and has been for a number of years a resident of Oklahoma City, and that he, too, has served as an Assistant Attorney General of the State of Oklahoma, and has been a member of Congress and has previously been a candidate for the office of Justice of the Supreme Court of this state. It further appears that both the relator and the defendant filed in the time and manner provided by law as candidates for the Democratic nomination to the office of Justice of the Supreme Court from the Third Supreme Court Judicial District of the State of Oklahoma. And that on May 3, 1934, pursuant to provisions of section 1, ch. 98, S. L. 1927, the relator filed with the State Election Board a petition purporting on its face to be signed by more than 100 registered voters of the Democratic party of the State of Oklahoma requesting the Election Board to strike the filing of the defendant as a candidate for the Democratic nomination to the office of the Justice of the Supreme Court from the Third Supreme Court Judicial District of the State of Oklahoma upon the ground that the filing of defendant was frivolous and not made in good faith; and in support of this allegation submitted an affidavit setting up the substance of casual conversation had by the relator and the defendant on April 22, 1934, wherein the defendant is charged with making the following statement to the relator, to wit:

"Since President Roosevelt made the assertion that in his judgment the young men would set the precedents in this country during the next four years, that idea has developed into a general movement, and is sweeping the country. This year more than ever before the younger men are filing for all offices and in most instances they will probably win out. This is a time when a man of my age has no business in politics, and I would not become a candidate this year under any consideration, because I know it would be hopeless. The others will have to sweat out this campaign this year, —but not me."

And that due to similarity of names, previous service as Assistant Attorney General and residence in Oklahoma City, the voters would be misled and confused, these being the only grounds for alleging that the filing of defendant was frivolous and not made in good faith. Thereupon the State Election Board duly notified the defendant of the filing of the challenging petition. The proceedings then had being

summarized in the final order in said matter as follows:

### "Order.

"This matter came on for hearing before the State Election Board of the State of Oklahoma, on the 10th day of May, 1934, upon the challenging petition of the above-named G. B. Fulton against the filing of Elmer L. Fulton, candidate for the nomination of Justice of the Supreme Court, Third District of Oklahoma, upon the Democratic ticket; the said G. B. Fulton appearing in person and by his attorney, Hon. G. F. Short, and the said contestee, Elmer L. Fulton, appearing in person and by his attorney, Hon. J. O. Counts; but on account of the press of business said challenging petition was delayed until the 11th day of May, 1934.

"Now on this the 11th day of May, 1934, the said matter again came before the said State Election Board for hearing. The contestant, G. B. Fulton, refused to put any evidence in support of his said challenging petition, but the said contestee, Elmer L. Fulton, putting on certain evidence touching the good faith on his filing as such candidate, and the matter was then taken under consideration by the said board.

"And now on this the 14th day of May, 1934, the said matter again coming before this board for final determination and hearing, the board finds that since the hearing of the matter on the 11th day of May, 1934, and within due time as provided by law, the said contestee, Elmer L. Fulton, has filed with the secretary of the board his counter petition, consisting of more than two hundred and fifty names of qualified electors, pursuant to the provisions of chapter 98, Session Laws 1927, requesting that the name of the said Elmer L. Fulton be placed upon the ballot at the coming primary election, to be held in Oklahoma, July 3, 1934.

"The board is of the opinion that the said office to which the said contestee, Elmer L. Fulton, aspires is a district office and therefore he is not required to file a counter petition signed by more than two hundred and fifty qualified electors of the State of Oklahoma; and it is so ordered by this board.

"The board concludes, therefore, that since the said contestee, Elmer L. Fulton, has filed with the secretary of this board a counter petition signed by more than two hundred and fifty names of qualified electors from his district, the said counter petition being found to be in due form and having been filed in due time, this board has no further jurisdiction in the matter.

"It is therefore ordered that the challenging petition of the said G. B. Fulton against the filing of the said contestee, Elmer L. Fulton, as candidate for Justice of the Supreme Court, Third District, State of Oklahoma, be and the same is hereby dismissed; and the secretary of the State Election Board is hereby ordered and directed to place the name of the said Elmer L. Fulton upon the ballots as a candidate on the Democratic ticket for the nomination of Justice of the Supreme Court, Third District, State of Oklahoma.

"Done by the Board, this the 14th day of May, 1934.

"(Signed) Thomas P. Holt, Chairman.

"(Signed) Geo. R. Taylor, Vice Chairman.

"Attest:

"(Signed) J. Wm. Cordell, Secretary."

That thereafter, and on the 18th day of May, 1934, the relator filed a motion with the Election Board challenging the sufficiency of the counter petition filed by the defendant and in support thereof filed a number of affidavits and certificates of the precinct registrars and county clerks of various counties in the Third Supreme Court Judicial District to the effect that certain of the signers of the counter petition of the defendant were not registered Democratic voters in the counties and precincts set forth in said counter petition, and also an affidavit of a handwriting expert that a number of the signatures appearing on the said counter petition were signed by the same person or persons. The Election Board took the position that in passing upon the sufficiency of the counter petition filed under section 5763, O. S. 1931, the board acted in a ministerial capacity and was without authority to determine the sufficiency of said petitions on extrinsic evidence, and denied the motion of the relator.

We will first consider the question of the constitutionality of this act; the defendant contending that the title is insufficient under the provisions of section 57, art. 5, of the Constitution of Oklahoma. We have had frequent occasion to construe this provision of the Constitution and have early adopted the liberal rule as set forth in the opinion by Mr. Chief Justice Williams in the case of In re County Commissioners of Counties Comprising the Seventh Judicial District, 22 Okla. 435, 98 P. 557, wherein it was held:

"Section 57, art. 5 (Bunn's Ed. p. 130), of the Constitution of this state, ordaining that 'every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title,' is mandatory; but its requirements are not to be exactingly enforced, or in such a technical manner as to cripple legislation."

And we have consistently adhered to this

construction through a long line of cases as set forth and discussed in State ex rel. Short, Attorney General, v. Johnson et al., 90 Okla. 21, 215 P. 945, and we adhere to the rule enunciated in the previous decisions of this court and see no good reason for departing therefrom at this time. The title of the act under consideration reads as follows:

"An Act relating to primary elections, defining the manner of filing of candidates at such elections and providing procedure where candidates in any primary election are unopposed."

It will be observed that the title of said act states that it is an act relating to primary elections, and the subject-matter of section 1 certainly relates to primary elections and no other kind, and is in our opinion sufficiently clear to put anyone on notice as to what the contents of the act might embrace, and is not violative of section 57, art. 5, of the Constitution. As we have said in Re Dawson et al., 136 Okla. 113, 277 P. 226:

"It is not necessary for the title of an act to embrace an abstract of its contents, and if an act has numerous provisions and such provisions have one general object, the title is sufficient if it fairly indicates the general purpose of the act."

It is the contention of the relator that the office of Justice of the Supreme Court is a state office and that under the provisions of said act it was incumbent upon the defendant to either file a counter petition signed by 1,000 qualified voters of the state duly registered as members of the political party involved in such candidacy requesting the filing to be allowed and the challenge dismissed, or to deposit in lieu thereof the sum of $250 with the secretary of the Election Board, and that the defendant having failed to do either, the petition which was filed was insufficient as a matter of law, and that it thereupon became the plain and mandatory duty of the Election Board to strike the filing of said defendant.

Section 5763, O. S. 1931, which is involved in this case reads as follows:

"The filing of any person as a candidate for nomination by any political party to any county, district, or state office may be challenged by the qualified electors of such county, district, or the state, and such challenge determined and action taken thereon in the manner hereinafter set out. * * *

"Within five days after the expiration of the filing period for district offices, any qualified elector of the district may file a petition with the State Election Board, signed by twenty-five or more qualified electors of the political party in which the filing has been made, requesting the State Election Board to strike the filing so challenged, upon the ground that such filing is frivolous, or not made in good faith. Immediately upon the filing of such petition the State Election Board shall require the person whose filing as a candidate is challenged, to file, or cause to be filed, with the State Election Board, within ten days from date of notification of the filing of such petition, a petition signed by not less than two hundred fifty qualified voters of the district affected, duly registered as members of the political party involved in such candidacy, requesting the filing to be allowed and the challenge dismissed, such petition presented by such candidate shall contain the post-office address of each signer, and the county, precinct in which such signer is a registered voter. Not more than one hundred fifty signers shall be from one county.

"Within five days after the expiration of the filing period for state offices to be voted upon by the state at large, any qualified elector of the state may file a petition with the State Election Board, signed by not less than one hundred duly registered voters of the political party of which the filing has been made, requesting the State Election Board to strike the filing so challenged, upon the ground that such filing is frivolous, or not made in good faith. Immediately upon the filing of such petition the State Election Board shall require the person whose filing as a candidate has been challenged, to file, or cause to be filed, with the State Election Board, within ten days from date of notification of the filing of such petition, a petition signed by one thousand qualified voters of the state, duly registered as members of the political party involved in such candidacy, requesting the filing to be allowed and the challenge dismissed, and such petition presented by such candidate shall contain the post-office address of each signer, and the county, precinct in which such signer is a registered voter, and not more than one hundred of such signers shall be from one county.

"The notification of the filing of any petition challenging the filing of any person as a candidate for the nomination of any office in any political party shall be deemed completed by the sending of a written notice by the county or State Election Board, as the case may be, by registered mail to the person whose filing is challenged, at his place of residence as stated in his written filing as a candidate. Should any candidate whose filing has been challenged fail to file proper petition in response thereto, as hereinabove provided, his filing shall be

stricken by the election board with which such challenge is filed, unless in lieu thereof the candidate should deposit with the secretary of the proper election board the sum of fifty ($50.00) dollars, as to county offices or district offices comprised of one county or less; one hundred ($100.00)) dollars, as to district offices comprised of more than one county, and two hundred fifty ($250.00) dollars, as to state offices, which sums shall be retained by the board, and by it covered into the general fund of the county as to county offices, or into the general fund of the state as to district and state offices, if such candidate fails to receive a minimum of 10 per cent. of the vote cast by his party for the office which said candidate seeks at the ensuing primary election. In the event the challenged candidate shall receive 10 per cent. of the votes cast, the sum of money above referred to shall be refunded; provided, that in no event, shall the candidate, depositing such sum, be required to list the same as any part or portion of his campaign expenditures when making a statement of same as provided by law."

It will be observed that this act relates to primary elections and to no other type of an election. The act covers county, district, and state offices and provides methods whereby the filing of any candidates for these respective offices may be challenged by the electors and also provides methods whereby any candidate so challenged may controvert such challenge either by filing the counter petition in the manner therein provided or else making a cash deposit with the election board having jurisdiction. The question here to be considered is whether candidates for the nomination to the office of Justice of the Supreme Court are to be treated under the act as state offices or district offices. The purpose of the act is to promote fair dealing and to prevent injustice by denying fraudulent or frivolous filings of candidates which may be made solely for the purpose of deceiving the electorate and without any intention or hope on the part of the candidate in being successful. To this end the act should be given, if possible, such construction as will effectuate the intention of the law-making body rather than to bring about its defeat. As we have said in Meads v. Human, 84 Okla. 82, 202 P. 797:

"* * * It is an established rule in the exposition of statutes that the intention of the lawgiver is to be deduced from a view of the whole and of every part of a statute taken and compared together. The several provisions of the statute should be construed together in the light of the general purpose and object of the act and so as to give effect to the main intent and purpose of the Legis

lature as therein expressed. If possible, a statute should be so construed as to render it a consistent and harmonious whole; if different portions seem to conflict, they should, if practicable, be harmonized, that construction being favored which will render every word operative rather than one which makes some words idle and nugatory."

The office of Justice of the Supreme Court is a state office, but the nomination for said office is by districts. Section 3, art. 7, of the Constitution provides in part as follows:

"The Supreme Court shall consist of five Justices until the number shall be changed by law. The state shall be divided into five Supreme Court judicial districts until the Legislature shall change the number of members of the court, at which time the Legislature shall redistrict the state to conform to the number of Justices of the Supreme Court. From each of said districts, candidates for Justices of the Supreme Court shall be nominated by political parties, or by petitioners of the respective districts, in the manner provided by law, and such candidates shall be voted for by the qualified voters of the state at large, and no elector at such election shall vote for more than one candidate from each district. * * *"

And section 3765, O. S. 1931, provides:

"The Supreme Court shall consist of nine Justices."

And in section 3766, O. S. 1931:

"The Supreme Court Judicial District Number Three shall embrace and include the following counties: (naming them)."

It will be observed that in paragraph 4, sec. 1, supra, it is provided:

"* * * Within five days after the expiration of the filing period for state offices, to be voted upon by the state at large."

Thus, it will be noticed that the act itself thus makes a distinction—not all state offices being included under this paragraph, but only those which are to be voted upon by the state at large—and as the act only relates to primary elections, it could not have been in the mind of the Legislature that any state offices which are not to be voted upon by the entire electorate of the state in the primaries should be included or considered under this provision, but all others are covered by the preceding provision for district offices. Therefore, since candidates for the office of Justice of the Supreme Court are nominated in the primaries from judicial districts and are not voted upon by the electorate of the state at large at such primaries, we are of the opinion that, within the meaning of this act,

they come within the purview of paragraph 3 thereof rather than paragraph 4 of section 1 of said act, and therefore, the contention of the relator is not well taken, and that the decision of the Election Board, in this respect, was correct.

It must be borne in mind that the relator is not seeking a judicial review of the action of the Election Board, but he is seeking a writ of mandamus; under such circumstances, the burden is upon the relator to show a clear legal right to the writ. As heretofore disclosed or recited in the order, this matter came on for final hearing before the Election Board on the 14th day of May, 1934. At that time the relator made no request for a continuance or for additional time to investigate the names contained in the counter petition and raised no objection to the Election Board making a final decision in the case. On the 18th day of May, 1934, he filed with the Election Board a motion, in effect, asking the Election Board to rescind its previous decision, which motion was based upon certain affidavits and certificates, and the Election Board refused to rescind their previous action. The record does not disclose that any request was made for additional time to check the genuineness of the certificates and signatures filed by the defendant, and the allegations of said motion were supported only by affidavits and certificates. Therefore, we hold that the relator failed to sustain the burden resting upon him to establish a clear right to the writ of mandamus.

As we have observed, the act under consideration provides that the filing of any candidate before the primaries may be challenged in the manner and at the times therein set forth. And that any candidate whose filing has been thus challenged may either file a counter petition as provided by said act or else deposit a certain sum of money in lieu thereof with the election board having jurisdiction in the premises. Thus it appears that under the act in question, when the challenging petition is filed it becomes the duty of the proper election board, with whom the same is filed, to ascertain that it complies with the requirements of the statute and thereupon to serve notice upon the challenged candidate as provided by the act, and thereupon such candidate may either file a counter petition with such board, which counter petition shall comply with the requirements of the statute, or else make a cash deposit in lieu thereof, and in the event either is done, the requirements of the statute have been met and nothing further remains to be done by the Election Board.

In holding as we have herein, we do not concede that the Election Board may act arbitrarily, capriciously, or fraudulently in any such matter, nor do we mean to limit the Election Board in protecting themselves from any false, fraudulent, or fictitious proceedings whereby it may be attempted to impose upon them, but we hold that under the general powers conferred upon said board by section 5692, O. S. 1931, they have ample jurisdiction to prevent any such imposition.

There are a number of other contentions presented in the pleadings and briefs of the respective parties which are not germane to the issues and which are unnecessary to a determination of this action and which we, therefore, decline to pass upon herein.

The petition for writ of mandamus is denied.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and BUSBY, JJ., concur. RILEY, C. J., dissents. WELCH, J., absent.

RILEY, C. J. (dissenting). The public policy in the state of Oklahoma involves and includes the mandatory primary system for selection of public officers. By section 5, art. 3, Constitution, it is the duty of the Legislature to provide such a system. This has been done. The system provided constitutes the exclusive method for selecting candidates by the political parties.

"Shadow filings" tend to destroy this feature of our governmental system. It is not so much the privilege of candidates that is to be considered by the courts and boards in such cases, but in a larger measure it is the right of the sovereign citizens that they be not confused in their choice of officers who are to be chosen by them. It is their right that this governmental policy and function be not destroyed or hampered.

Whenever two men of the same names are filed for the same office, it is probable that a fraudulent filing exists. As a practical thing, in view of numerous other filings as usually exist in this case and in this state, no one of those possessed of the same name can be nominated. The counters at the election are confused in their tallies and an intolerable condition exists. Wisdom would seem to dictate to one possessed of a name already filed, unless fraud

exists in that filing, that he await a more opportune time to serve the public, or that he seek preferment to some similar office.

G. B. Fulton, the first candidate filed for the office involved, seeks a writ of mandamus to strike the name of Elmer L. Fulton, who subsequently filed, "or for such other and further relief as may seem meet and just" to the court.

The spirit of modern law is to grant relief according to facts shown. Our courts are not bound down nor hedged in by useless and antiquated forms. It can no longer be properly said that one seeking redress from grievances must speak the magical words of an ancient formula, but the spirit of modern law is to look to the facts and not to the form or prayer for relief. By legislative act and judicial construction the distinction between forms of law and equity are abolished in this jurisdiction.

Herein, if the applicant shows he has not been fully heard before the board, this court should compel such a hearing by the writ sought.

On the very day that contestee filed his counter petition the board held it sufficient in spite of the fact that after a three-day checking of the names the contestant showed by certificates of precinct registrars and county clerks that the names contained on the petition were not sufficient in that only 213 of them were registered as required by law.

The law (chapter 98, S. L. 1927) requires a counter petition to be signed by a designated number of qualified voters of the district affected, duly registered as members of the political party affected. And "such petition * * * shall contain the post office address of each signer, and the county precinct in which such signer is a registered voter."

The evident purpose of the requirement of the petition as to address and precinct registration is to allow an inquiry into the question of fact as to registration and affiliation with the political party concerned.

When a challenge occurs as to the sufficiency of the counter petition as in this case, an inquiry must precede determination. A hearing contemplates a reasonable opportunity to adduce evidence. A writ of mandamus is necessary herein to secure this right to petitioner, and should issue out of this court to compel a hearing by the board as contemplated by law.