## PRUDENTIAL INSURANCE CO. v. HILL.

No. 25342. Oct. 1, 1935.

Roy P. Swanson and Ray McNaughton, for plaintiff in error.

Ralph W. Hyatt, Meservey, Michaels, Blackmar, Newkirk & Eager, and Commons & Chandler, for defendant in error.

CORN, J. This action was originally brought in the county court of Ottawa county for the recovery of the sum of $540 on a life insurance policy. The defendant, the Prudential Life Insurance Company of America, defended on the alleged ground that the applicant was not in sound health at the time the policy was issued, and that according to a provision in the policy rendering the same void if the applicant was not in sound health at the time of its issuance, the policy never went into effect.

The trial court instructed a verdict as follows:

"Gentlemen of the jury, in this case plaintiff sues the defendant on an insurance policy in the sum of $540; the defendant denies all of the allegation—denies any liability by reason of the insurance policy, and bases its defense on the proposition that the insurance policy is based on the application and answers given therein. Under the laws of this state the insurance company is required to attach to the insurance policy a copy of the application and that unless that is done that cannot be interposed—that is the claim of false answers having been given in the application, cannot be interposed as a defense.

"Therefore, I will direct that the jury return a verdict in favor of the plaintiff for the amount sued on."

The defendant objected to the foregoing instruction and moved the court to direct the jury to return a verdict in favor of the defendant as follows:

"Mr. Swanson: Let the record show that the defendant objects to the remarks of the court in that the court has misstated the defenses in this case—has not in any way indicated that the defense of the sound health provision of the policy itself is considered in any way by the court in arriving at its conclusion. That the policy itself provides that the insured must be in sound health on the date of the policy, and that the evidence clearly shows that the insured on the date of the policy was suffering from tuberculosis and many other ailments. And now the defendant moves the court to direct the jury to return a verdict in favor of the defendant under the evidence in the case."

The motion was overruled and the defend ant saved its exception. The jury rendered its verdict accordingly, and the court rendered judgment for plaintiff according to the instructed verdict. The defendant insurance company brought this appeal for the reversal of said judgment, and the parties will be referred to herein as plaintiff and defendant in the same order as they appeared in the trial court.

The trial court refused to receive in evidence the application or any testimony as to the statements contained in the application, on the ground that the application was not attached to the policy and made a part of the contract. The court evidently based its ruling upon section 10519, O. S. 1931, which provides as follows:

"In any claim arising under a policy which has been issued in this state by any life insurance company, without previous medical examination or without the knowledge and consent of the insured, or in case said insured is a minor, without the consent of the parent, guardian, or other person having legal custody of said minor, the statements made in the application shall, in the absence of fraud, be deemed representations and not warranties; Provided, however, that the company shall not be debarred from proving as a defense to such claim that said statements are willfully false, fraudulent or misleading; and provided, further, that every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received in evidence."

But the defendant contends that the policy in question is an industrial policy and is excepted from the provisions of the statute just quoted by reason of section 10530, O. S. 1931, which provides in part, as follows:

"This article shall not apply to annuities, industrial policies, nor to associations operating on the fraternal plan, nor to farm mutual companies. * * *"

The question is raised as to whether the policy is actually an industrial policy, and entitled to be classified as insurance excepted from the provisions of section 10519, supra. We find no statute prescribing any particular form for an industrial policy, yet there must be certain characteristics to distinguish an industrial policy from other kinds of insurance. In this connection we refer to an observation made by this court in the case of Prudential Insurance Company v. Howell, Adm'r, 144 Okla. 166, 289 P. 734, which is stated in the following language:

"* * * From an examination of numerous

authorities on the question, it seems that industrial insurance in a general sense means policies issued in small amounts in consideration of weekly payments as distinguished from ordinary insurance which is usually in large amounts and maintained by annual, semi-annual, or quarterly premiums. The underlying principle of the industrial policy is to provide a means whereby the laboring or more unfortunate masses may be able to carry small amounts of insurance upon the payments of a small proportion of weekly wages or earnings to meet such exigencies as may usually arise in case of death. The smallness of the amount and of the premium paid, together with the purposes for which it was designed, made it highly desirable that upon the death of the insured, payment be made promptly without expense in the form of litigation by claimants, proceedings for the appointment of a personal representative, and without unnecessary risk on the part of the insurer. In order to accomplish these results, the clause known as the 'Facility of Payment' clause has been somewhat universally adopted."

We find from an examination of the policy as copied into the record that the premiums are payable weekly and that it contains the "Facility of Payment" clause, which provides as follows:

"Facility of Payment.—It is understood and agreed that the said company may make any payment or grant any nonforfeiture provision provided for in this policy to any relative by blood or connection by marriage of the insured, or to any person appearing to said company to be equitably entitled to the same by reason of having incurred expense on behalf of the insured, for his or her burial, or for any other purpose, and the production by the company of a receipt signed by any or either of said persons or of other sufficient proof of such payment or grant of such provision to any or either of them shall be conclusive evidence that such payment or provision has been made or granted to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied."

We also find that the application signed by the insured bears upon its face the printed designation "Application for Industrial Insurance," and that the policy provides that "the basis of the nonforfeiture values is the net reserve according to the Standard Industrial Mortality Table." Also there is printed on the back of the policy under the name of the company the legend: "Founded by John F. Dryden, Pioneer of Industrial Insurance in America."

Therefore, we conclude that the policy in question is an industrial policy, and hold that the application with the statements therein contained need not be attached to the policy in order that the same may be admissible in evidence.

But the plaintiff contends that the excepting section, supra, is unconstitutional; that it is in conflict with article 5, sec. 57, of our State Constitution, which provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills," etc.

Section 10530, O. S. 1931, is a part of chapter 51, article 1, relating to insurance and was enacted in 1909, c. 21, being section 73 thereof. The enacting clause and title of that act is as follows:

"A bill entitled an act relating to insurance and repealing article 1, chapter 44, Statutes of Oklahoma, 1893, being running sections 3025 to 3057, inclusive, and article 3, c. 44, Statutes of Oklahoma, 1893, being running sections 3062 to 3092, inclusive, and all laws and parts of laws in conflict with this act, and declaring an emergency."

The plaintiff contends that there is nothing in the title or enacting clause to notify, advise, or call attention to the fact that the provisions of the various sections do not apply to "annuities, industrial policies," etc.

Now it must be conceded that the title to this act is very general, but where it appears, as it does in this instance, that the section in question is referable and cognate to the subject expressed in the title, it meets the requirements of the Constitution.

This question was discussed at length in the case of Johnson v. Grady County, 50 Okla. 188, 150 P. 497, the opinion being a review of the authorities on the subject, including earlier decisions of this court.

Black on Interpretation of Laws, c. 6, sec. 76, p. 175 says:

"Where the Constitution of the state provides that each act of the Legislature shall relate to but one subject, which shall be expressed in the title, the effect is to make the title a part of the enactment, so that any provision of the act which lies outside of the title will be rejected by the courts as unconstitutional, if that can be done without destroying the entire law. In this case, it is very clear that the title may be resorted to as an aid in the interpretation of the statute, and that it will be entitled to greater weight than belongs to it in the absence of the constitutional provision, since it must be presumed that the mind of the Legislature was directed to the title no less than to the provisions of the enacting clause. * * * The constitutional mandate that the subject

of every law shall be expressed in its title has given the title of an act a twofold effect. It has added additional force to the title as an indication of legislative intent in aid of the construction of a statute couched in language of doubtful import, and it also operates as a constitutional limitation upon the enacting part of the law. The enacting part of the statute, however, clearly expressed, can have no effect beyond the object expressed and embraced in the title. To maintain any part of such a statute, those portions not embraced within the purview of the title must be rescinded and if the superaddition to the declared object cannot be separated and rejected the entire act must fall."

In the case of Holcomb v. C., R. I. & P. Ry. Co., 27 Okla. 667, 112 P. 1023, Justice Dunn, of the Supreme Court of Oklahoma, in discussing the purpose of this provision of the Constitution, said:

"This constitutional provision, or one of similar import, is contained in the Constitutions of practically all of the states in the Union, and its purpose and scope has received consideration at the hands of the appellate courts of practically every jurisdiction. Judge Cooley, in his work on Constitutional Limitations (7th Ed., p. 205), says: 'The intent of this provision of the Constitution was to prevent the union, in the same act, of incongruous matters, and of objects having no connection, no relation. And with this it was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another.' And similar expressions will be found in other reported cases. It may therefore be assumed as settled that the purpose of these provisions was: First, to prevent hodge-podge or 'log-rolling' legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made of the objects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire."

In the case of City of Pond Creek v. Haskell, 21 Okla. 711, 97 P. 338, this court said:

"Under this clause of the Constitution, the title of a bill may be very general, and need not specify every clause in the statute, it being sufficient if they are all referable and cognate to the subject expressed; and, when the subject is expressed in general terms, everything which is necessary to make a complete enactment in regard to it, or which results as a complement of thought contained in the general expression, is included

in and authorized by it. But, if clauses are contained in the act which are not so correlated to the subject expressed in the title as to appear to follow as a natural and legitimate complement, they cannot stand."

The policy in this case does not come under the terms of section 10519, supra, for the further reason that the policy contains no reference to the application. In Continental Casualty Co. v. Owens, 38 Okla. 107, 131 P. 1084, it was held that said section does not prevent proof that statements made in the application are willfully false, fraudulent, or misleading by the introduction of the application in cases where the policy contains no reference thereto, either as a part of the policy or as having any bearing thereon.

In the case at bar the defendant alleged fraud in its answer as a defense and was entitled to have the question submitted to the jury, and we are of the opinion that the trial court erred in excluding the application and testimony relative to the health of the insured at the time the policy was issued. As we view the case, the only question there was in the case to be determined was whether the insured practiced fraud upon the insurance company in procuring the policy and this was a question of fact which should have been submitted to the jury for determination.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded, with directions that a new trial be granted.

McNEILL, C. J., and BAYLESS, WELCH, and PHELPS, JJ., concur.