STATE ex rel. OKLAHOMA STATE HIGHWAY COMMISSION et al. v. HORN et al.

No. 28251. June 18, 1940.

Rehearing Denied Sept. 10, 1940.

*105 P. 2d 234.*

Mac Q. Williamson, Atty. Gen., and Houston Reeves, Asst. Atty. Gen., for plaintiffs in error.

Henry S. Johnston, of Perry, and Hill & Hill, of Cherokee, for defendants in error.

DAVISON, J. The present action was commenced by the widow and the administrator of John Horn, deceased, to recover against the state and its Highway Commission for damages for injuries allegedly inflicted upon the farm, together with the home and certain personal property thereon, of the said John Horn and his wife, when said premises were inundated by the flood waters of Eagle Chief creek after heavy rains in that vicinity during August, 1932.

In their petition, the plaintiffs purported to state three causes of action. The trial court sustained the defendants' demurrer to the second and third alleged causes of action, but overruled it as to the first. After the waiver of a jury trial, the cause was tried to the court on the plaintiffs' first alleged cause of action and judgment was entered in their favor in the sum of $1,000 for damage to real estate and $1,750 for damage to personal property. After their motion for a new trial was overruled, the defendants perfected this appeal.

Most of the argument in the defendants' briefs is advanced in support of the alleged error of the trial court in overruling its demurrer to the first pur-ported cause of action alleged in the plaintiffs' petition. It was therein asserted that the inundation and the damages resulting therefrom were due to the negligence of the Highway Department, its agents and employees in constructing a bridge and the approaches thereto across Eagle Chief creek on State Highway No. 45 near the plaintiffs' farm in such a manner that drainage from the valley of said creek was obstructed.

Counsel for the plaintiffs concede that the state cannot be sued without its consent, but they maintain that the present action is expressly authorized by article 17, chap. 65, S. L. 1935, which together with its title reads as follows:

"An Act authorizing John Horn, his heirs, executors, and administrators to institute and prosecute an action against the State of Oklahoma in the matter of damages suffered by him to his property by reason of the wrongful act of the Highway Department; and declaring an emergency.

"Be It Enacted by the People of the State of Oklahoma:

"Section 1. John Horn—Suit against the State authorized.

"That consent is hereby given to John Horn, his heirs, executors, and administrators, of Alfalfa County, Oklahoma, to institute and prosecute a suit or suits in any of the District courts of Oklahoma against the State and the Highway Commission thereof in any form or way necessary or proper to determine, discover, and to predicate his claim of damage to property resulting from the negligent or wrongful acts of the Highway Department upon, along, and adjacent to real estate owned by the said John Horn, his heirs, executors, and administrators, in Alfalfa County, Oklahoma, occurring (sic) in the year 1932. The maximum amount of such suit not to exceed Ten Thousand ($10,000.) dollars.

"Approved May 9, 1935. Emergency."

Counsel for the defendants assert that the above-quoted act is ineffective as an authorization of the present action

for the reason that it is a "special law" and unconstitutional under section 59, article 5, of the Oklahoma Constitution. They cite the case of Jack v. State, 183 Okla. 375, 82 P. 2d 1033, which was followed in the cases of Ford v. State, 183 Okla. 386, 82 P. 2d 1045, and Graham v. State, 183 Okla. 574, 83 P. 2d 815, as being decisive of the question here presented. On the other hand, counsel for the plaintiffs assert that the views expressed in State v. Fletcher, 168 Okla. 538, 34 P. 2d 595, rather than those enunciated in the Jack Case should be applied here. Their position seems to be based upon the hypothesis that article 17, chap. 65, S. L. 1935, does not purport to bestow upon the plaintiffs the special right or privilege of suing the state for damages resulting from the negligence of its officers, agents, or employees, as did the act involved in the Jack Case, but that it merely provides them with a means of bringing an action against the state to enforce a right that all citizens have under section 24, article 2, of our state Constitution to just compensation for their property that is damaged for a public use. Our views upon this point are reflected in a large measure by our opinion in the case of State of Oklahoma v. Adams et ux., 187 Okla. 673, 105 P. 2d 416. In the latter case the argument advanced with reference thereto, as well as the nature of the injury involved, was in all material respects identical with that with which we are now dealing. There we noted that the plaintiffs therein did not base their claim upon the negligence or wrongdoing of any officer or agent of the state as was done here and in the Jack Case, but we also pointed out that the real basis of such a claim was the damaging of private property for a public use and the right to damages for such an injury was given by section 24, article 2, of our State Constitution, regardless of whether or not the same was negligently inflicted. This principle has long been adhered to not only in this jurisdiction, as shown by the cases cited in the Adams opinion, but is the recog-

nized rule in other jurisdictions. See 20 C. J. p. 673, sec. 140 b. In order to support an argument that what was decided in the Jack Case is conclusive upon the question involved herein, the syllabus of our opinion therein must be construed as placing within the category of special legislation forbidden by section 59, article 5, of our Constitution, all legislative enactments which purport to authorize certain named individuals "to institute and maintain an action against the state to determine liability and recover the loss or damage sustained as a result of alleged negligence of the officers, agents, and employees of the State Highway Department. * * *" A fair and accurate examination of the whole of said syllabus and the portion of the opinion dealing directly therewith readily reveals that it does not necessarily support such a conclusion and that same is an attempted expansion if not an absolute misconstruction of its true and exact import. Both the syllabus and the body of the opinion show that the basis of Mrs. Jack's alleged cause of action was the failure of the officers, agents, and employees of the State Highway Department to properly maintain a highway. There the plaintiffs' right to recover, if any, depended solely upon proof of a tort by an instrumentality of the state, while upon a claim like the present one, the Constitution, as we have pointed out, recognizes a right of action independent of the commission of a tort in the accrual thereof.

It is immaterial to a consideration of the question now before us that the act authorizing the present action is composed of such general language that it might be construed as allowing the maintenance of an action for a tort by the Highway Department as well as an action for the recovery of injuries to "private property * * * damaged for public use. * * *" The object of the statute is the important thing, and since the injury for which it authorizes the maintenance of an action is so vaguely de-

scribed therein, a reference to the facts established in the controversy arising out of said injury is necessary to determine its exact character. See State et al. v. Hale et ux. (Tex. Civ. App.) 96 S. W. 2d 135. A cursory examination of these is sufficient to establish beyond any doubt that this action concerns the "damaging" of property for a public use. Consequently, in the absence of language in article 17, chap. 65, S. L. 1935, that positively precludes such a conclusion, we must conclude that the wrong **to whose judicial** determination said act was intended to apply was nothing more nor less than the damaging of private property for public use.

Another provision of the Oklahoma Constitution that defendants contend is violated by article 17, chap. 65, S. L. 1935, is section 46, article 5. Their counsel express the belief that said constitutional provision can be said to prevent the conferring of jurisdiction of a particular suit upon the courts by a special act, but they also say that said question need not be decided herein and rely upon the application given a similar provision of the Constitution of Pennsylvania in the case of Collins v. Commonwealth, 262 Pa. 572, 106 Atl. 229, which is quoted with approval in Jack v. State, supra. Even if this question had not been decided adversely to the defendants in the fourth paragraph of the syllabus in State v. Adams, supra, it is so disposed of in the very authority the defendants rely on, as readily appears from the excerpt quoted from the Pennsylvania case in the Jack Case. There the Supreme Court of Pennsylvania specifically announces that where, as in this case, the act does not create the liability, but the liability exists "at the time the act authorizing suit was passed, then" the "act, though special," does not contravene constitutional provisions like section 46, article 5, supra.

The defendants also contend that article 17, chap. 65, supra, violates section 15, art. 10, of our Constitution, if it confers upon the plaintiffs a right of action which they did not have before the passage of said act, but in their reply brief they concede that this contention is untenable otherwise. It is therefore unnecessary to discuss the argument advanced under this proposition in view of what this court has already decided concerning the source of such right.

In the defendants' reply brief their counsel call our further attention to the fact that Mr. and Mrs. Horn executed an easement to the state granting the latter the right to construct and maintain a public highway upon a part of their land. This is made the basis for another contention essentially the same as the one disposed of in the first paragraph of the syllabus in the Adams Case, supra. Therefore, we shall not separately treat it herein, but hereby incorporate herein the views expressed in that case upon this point.

Another proposition formulated by defense counsel is that article 17, chap. 65, supra, violates section 57, art. 5, of the State Constitution. The argument advanced in support of this contention is that in authorizing the maintenance of the action against the State Highway Commission as well as the state of Oklahoma, the body of the act embraces a subject which is not clearly expressed in its title. There is no merit in this argument. The subject of the act as expressed in the title is the authorization of an action for damages against the state on account of a wrong inflicted through the agency of its "Highway Department." The recognition or apprehension that said action may be instituted against the Highway Commission as well as the state and a consent to such procedure published in the body of the act does not constitute, as we view it, the inclusion therein of another subject than that which the title comprehends. The purpose of the constitutional provision under consideration is to forbid the joining of diverse or unconnected subjects in one and the same act. Missouri, Kansas & Texas R. Co. v. Washington County, 136 Okla.

191, 276 P. 769; Turner v. Cox, 138 Okla. 225, 280 P. 568; Oklahoma Light & Power Co. v. Corporation Commission of Oklahoma, 96 Okla. 19, 220 P. 54; C. C. Julian Oil & Royalties Co. v. Capshaw, 145 Okla. 237, 292 P. 841. It does not require that the title of the act contain a complete abstract or index of its contents. In re Dawson, 136 Okla. 113, 277 P. 226; Ex parte Owen, 143 Okla. 8, 286 P. 883; Brooks v. State, 152 Okla. 119, 3 P. 2d 814; State ex rel. Fulton v. State Election Board, 168 Okla. 446, 33 P. 2d 800; Perry v. Carter, 173 Okla. 267, 48 P. 2d 278. The title may express the purpose or object of said law in very general terms, leaving the details in connection with the accomplishment of same to be set forth in its body. Oklahoma City v. Grigsby, 171 Okla. 23, 41 P. 2d 697; Cooper v. King, 171 Okla. 121, 42 P. 2d 249; Prudential Ins. Co. of America v. Hill, 174 Okla. 33, 49 P. 2d 1067; Oklahoma City Land & Development Co. v. Hare, 66 Okla. 190, 168 P. 407; Ex parte Powell, 6 Okla. Cr. 495, 120 P. 1022. The language of section 57, art. 5, supra, is not to be given the strictest construction or enforced in such a manner as to cripple legislation. In re County Com'rs of Counties Comprising Seventh Judicial Dist., 22 Okla. 435, 98 P. 557; Chicago, R. I. & P. Ry. Co. v. Excise Board of Stephens Co., 168 Okla. 519, 34 P. 2d 274; Dabney v. Hooker, 121 Okla. 193, 249 P. 381; State v. Bonner, 86 Okla. 280, 208 P. 825. Unless the body of the act contains provisions that cannot be said to relate to the general subject referred to in the title and the act clearly contravenes the requirements of said section, it should not be declared unconstitutional on such ground. See Jefferson v. Toomer, 28 Okla. 658, 115 P. 793; State ex rel. Read v. Midwest Mutual Burial Ass'n, 176 Okla. 468, 56 P. 2d 124; Walker v. Local Building & Loan Ass'n, 176 Okla. 168, 54 P. 2d 1078; Wallace v. Gassaway, 148 Okla. 265, 298 P. 867; State v. Pitts, 137 Okla. 59, 227 P. 918. Viewed in the light of the foregoing principles, it is obvious that the defendants' contention that article 17, chap. 65, supra, violates section 57, art. 5, of the Oklahoma Constitution cannot be upheld.

The next proposition asserted by the defendants is that, since Nettie Horn joined with her deceased husband's administrator in bringing this action, the trial court had no jurisdiction of it because article 17, chap. 65, supra, gave express consent only to "John Horn, his heirs, executors and administrators" to maintain same. An argument identical in all material respects with this one was advanced by the state in the Adams Case, supra. Since the situation relative to this point is the same in both cases, we deem it unnecessary to again discuss it and hereby adopt all that was said in the Adams Case as decisive of the identical question here.

The defendants next contend that the judgment heretofore entered herein is unsupported by the evidence for the reason that the consideration paid for the right-of-way easement upon the Horn farm satisfied all claims plaintiffs might have to damages from the proper construction of the highway in question, and the evidence fails to establish any negligence in said construction. It is unnecessary to examine the record to determine whether the officers, agents, and employees of the defendants were negligent in constructing the highway and the bridge thereon as they did. What we have already said eliminates the question of negligence from our consideration. The only authorities cited by the defendants for their position on this point are the cases of Kansas City, P. & G. Ry. Co. v. Williams (Ind. T.) 58 S. W. 570, and Poston v. City of McAlester, 132 Okla. 4, 268 P. 1110. We demonstrated that the latter opinion was not applicable to a case like the present one in State of Oklahoma v. Adams et ux., supra. Although the first paragraph of the syllabus in the Williams Case appears to support the defendants' argument, reference thereto reveals that said decision was rendered

by the territorial court before the advent of our State Constitution. Therefore, in view of the construction this court has placed upon section 24, article 2, of said document, the rule of the Williams Case has long since been sapped of its vitality and deprived of its usefulness in an action of this character. As early as the year 1916, this court in the case of City of Muskogee v. Hancock, 58 Okla. 1, 158 P. 622, after a thorough consideration of the effect of such constitutional provisions upon cases where private property had been damaged in the construction of public improvements, concluded that the "plaintiff's right to recover cannot be made to rest upon the defendant's want of care, or negligence in the construction. * * *" There is sufficient evidence in the record to warrant the trial court in concluding that the proximate cause of the excessive overflow in the present case was not an act of God in the form of unprecedented rainfall, but the obstruction by the highway embankments of the natural drainage of surface water in the valley of Eagle Chief creek. In view of such evidence and the law applicable thereto, the defendants' argument concerning their freedom from responsibility for the injuries in question is without merit.

The remainder of the argument advanced on behalf of the defendants is in support of their assignment that the judgment is excessive and contrary to the evidence. In their petition the plaintiffs claimed damages to their personal property in the sum of $1,810. Among the separate items of alleged damage included in this total sum were the following: $300 to machinery and tools; $200 to clothing and personal effects; $100 to library, books, pictures, etc.; $400 to household goods, carpets, bedding and furniture; $600 for 2,000 bushels of wheat; and $40 for seven tons of alfalfa hay. We have thoroughly examined the record and find therein no proof whatsoever of the first three items listed above. The witness Lawrence Partrick testified that by reason of the overflow upon the Horn farm "trash and stuff" was washed in and upon Mr. Horn's "tools and other machinery," but there is no description whatsoever of the tools and machinery in the record nor any evidence from which the extent of their damage could be ascertained. According to Mrs. Horn's testimony, when the flood waters penetrated the Horn home, there were articles damaged in addition to those contemplated in the $400 item for "household goods, carpets, bedding and furniture," but since the evidence does not show what the same were, nor the extent to which they were damaged, there is no proof to support an allowance of $300 for clothing, personal effects, library, books, pictures, etc. Thus it will be seen that at least $600 of the total sum of $1,810 in damages to personal property claimed in plaintiffs' petition is without sufficient evidentiary basis and could not be judicially allowed. Counsel for the plaintiffs asserts that the evidence established damages to wheat of $267.20 and damage to barley of $80 more than was alleged in the petition and that the trial court allowed said pleading to be amended to conform to such proof. It will readily be observed, however, that if counsel's claim were upheld, the additional damages claimed would not offset the items of damages totaling $600 that were not proved. When that amount is subtracted from the total claimed damages of $2,157.20, the remainder is only $1,557.20. As there is no competent evidence in the present case to support the trial court's award of $1,750 for damages to personal property, the same must be vacated and set aside. However, this does not mean that the entire cause must be tried again. Since the defendants do not argue that the $1,000 awarded the plaintiffs for damages to the real property constitutes an excessive allowance therefor, only that part of the judgment granting the plaintiffs damages for personal property will be affected by our decision herein.

In accordance with the views announced herein and following the

precedent of prior decisions (see Lone Star Gas Co. v. Parsons, 159 Okla. 52, 14 P. 2d 369 and Holbrook v. Moore, 177 Okla. 173, 58 P. 2d 865), the judgment of the trial court is affirmed as to its assessment of damages to the real property involved, but is reversed as to the assessment of damages to personal property, and said cause is remanded to the trial court for a new trial upon the latter issue only.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, OSBORN, and HURST, JJ., concur. DANNER, J., dissents. GIBSON and CORN, JJ., absent.